69    249
208   ¹476
25 SC ¹392
69    249
212   ¹579

## Beetem's Administrators *versus* Burkholder.

1. Where a party has a right to rescind a contract and elects to do so, he must give notice to the vendor and offer to return the thing sold before suit to recover back his money, unless the thing which was the consideration of the contract be entirely worthless.

2. Burkholder bought stock from Beetem, and afterwards brought suit in rescission of the contract on the ground of fraud. *Held*, that whether the stock was worthless at the commencement of the suit, was a question for the jury.

3. The vendor should have the option to join in the rescission and take back the property at the earliest period: he must have notice, which he has upon tendering the thing sold, and the price demanded.

4. Beetem, when he sold the stock was cashier of a bank, forbidden by the Act of 16th April 1850, to speculate in stocks. Burkholder sought to rescind on the ground that the contract was illegal. The *onus* was on Beetem, who alleged that Burkholder was *particeps criminis,* to show that he knew that Beetem was violating the law by speculating in stocks.

5. The maxim *Lex neminem cogit ad vana seu inutilia* applied.

6. Babcock *v.* Case, 11 P. F. Smith 427, distinguished; Pearsoll *v.* Chapin 8 Wright 12; Ritchie *v.* Summers, 3 Yeates 531 recognised.

May 25th 1871.   Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county:* No. 86, to May Term 1871.

This was an action of assumpsit, brought August 12th 1865, by Henry L. Burkholder against J. W. Patton and J. A. Stuart, administrators, &c., of William M. Beetem, deceased. The declaration was in the common counts.

The cause was tried, November 9th 1869, and a verdict rendered for the defendants. The record was removed to the Supreme Court, where the judgment was reversed, and a *venire facias de novo* awarded. The facts are found at large in the report of the case (15 P. F. Smith 496).

The cause was again tried, January 11th 1871, before Graham, P. J.

Beetem, the decedent, who died July 26th 1865, was the cashier of the Carlisle Deposit Bank at the time of his death and for a considerable time previously to August 1864, when he became the owner of 1000 shares of stock in the Glenville Coal Company, for which he paid $40 a share. The evidence was that in January 1865 he sold to the plaintiff 60 shares of this stock at $50 per share, and that the plaintiff paid him the purchase-money, $3000, on the 4th of February. The stock having depreciated, the plaintiff brought this suit in rescission of the contract, alleging that Beetem had practised fraud upon him in selling him stock which Beetem knew was of little value, and also because the contract was illegal, as being in violation of the Act of April 16th 1870,

[Beetem *v.* Burkholder.]

§ 10, Pamph. L. 481, Purd. 90, pl. 25, which forbids the cashier of a bank from engaging in the purchase and sale of stocks under a penalty of $500. He further claimed that he had the right to rescind, on the ground that Beetem was his agent to purchase stock, and had sold his own stock to plaintiff above its value, the plaintiff not knowing that it was his.

The evidence was that shortly before the sale to the plaintiff, Beetem transferred all his stock to a firm of brokers in Boston; but that they had no interest in the stock, and that the transfer of the 60 shares was made by these brokers to the plaintiff.

There was evidence that shortly before this suit was brought, the stock was worth $20 per share if then forced on the market, but that in the opinion of the broker consulted in Philadelphia, it was not then advisable to sell, as he thought for reasons which he gave, the price would advance.

There was evidence on both sides to sustain the positions of the parties respectively.

The plaintiff's 2d and 3d points with their answers were:—

2. "If without even intending fraud, Beetem acted as agent in making an investment of $3000 for Burkholder, and in the capacity of agent sold to Burkholder his own Glenville stock, Burkholder not knowing that he, Beetem, was selling him, Burkholder, his own stock, but merely investing the money as his agent, Burkholder, may, on discovering the stock to be Beetem's, refuse to be bound by such a purchase and recover back the $3000 and interest, from the 4th of February 1865, and when the stock was of little or no value, and this without a previous transfer of the stock to Beetem or his administrators."

Answer: "Under the facts stated in this point Burkholder may recover back the money paid to Beetem without tendering a retransfer of the stock, if it was of no value. If it was of value then an offer to retransfer would be necessary, but this would not, under the circumstance of this case, be required before suit brought. A retransfer was tendered at the former trial, and has been re-tendered at the present trial, so that the want of retender of the stock will not prevent a recovery in this case, as we have stated in our general charge."

3. "Beetem, while cashier of the 'Carlisle Deposit Bank,' had no right to deal and speculate in stocks, to buy and sell them; if he did so the party buying from him, could, upon discovering that the stock belonged to Beetem, and was worthless, repudiate the transaction, and recover back the money paid by him. In order to make the contract binding upon the purchaser of stocks from Beetem it would require the defendants to show that the purchaser knew Beetem was so engaged in buying and selling stocks, and that the stock purchased was Beetem's. There is no evidence in this case to show that Burkholder knew that Beetem was violating

[Beetem v. Burkholder.]

the law, and was engaged in buying and selling stocks and that the sale of the Glenville stock to him was one of his transactions in this unlawful business, therefore Burkholder has a right to repudiate the sale to him and recover the $3000 paid Beetem, with interest from February 4th 1865, and this without a previous retransfer of the stock when of little or no value."

Answer : " The first part of this point is answered in the affirmative. There is no evidence on the face of this transaction, or other evidence, that we recollect, that Burkholder knew he was purchasing from Beetem, and if he did not know, he would not be a party to the illegal transaction, or affected by it, and would have a right to rescind the contract, and recover the money paid, and the fact that a retransfer was not tendered before suit brought will not prevent a recovery."

The defendants' 1st, 2d and 3d points with their answers were :—

1. " The plaintiff, having neglected to rescind the contract for the sale and purchase of Glenville Coal Company stock by retransferring or tendering the transfer of the same to defendants' intestate in his lifetime, or to the defendants prior to the bringing of this suit, or at a time when it was in the plaintiff's power to place the defendants in the position occupied at the time of the sale, he cannot recover in this action, even though the contract may have been illegal, or the purchase induced by fraudulent representations."

Answer : " Under the circumstances of this case we decline answering this point in the affirmative, for the reasons stated in our general charge."

2. " If the jury believe that William M. Beetem, while cashier of the Carlisle Deposit Bank, engaged in the purchase and sale of stocks contrary to the law, any contract for the sale of stocks made by him would be illegal; but where such a contract has been executed by a delivery of the stock, and payment of the purchase-money, as in this case, Mr. Burkholder, the plaintiff, in seeking to recover back the purchase-money paid by him for the Glenville Coal Company stock, thereby bases his cause of action upon an illegal contract to which he was a party. Until he has, therefore, affirmatively shown to the satisfaction of the jury that Mr. Beetem concealed from him the ownership of the stock, he is without standing in court, and every intendment and presumption of fact and law must be taken against him."

Answer : " If Mr. Burkholder knew Beetem was dealing in stocks at the time he purchased, then he cannot recover. But he is not required to show affirmatively that Beetem concealed from him (Burkholder) the ownership of the stock. This would be presuming a man guilty until he proved his innocence."

3. " The Act of 1850 relative to cashiers, being a public general statute, of which all are bound to take notice, the burden is there-

[Beetem *v.* Burkholder.]

fore cast upon Mr. Burkholder, the plaintiff in this case, of show-ing, that at the time of his purchase of the Glenville stock, he was ignorant that it belonged to Mr. Beetem, and Mr. Beetem con-cealed his ownership of the stock from him, and if the jury believe that there is no evidence of what really transpired at the time of the sale of said stock, the presumption is one not to be got over or disregarded by them that Burkholder knew whose stock he was buying, and their verdict must therefore be for the defendants."

Answer: "We cannot answer this as requested."

The defendants, in their 6th point, asked the court to charge that they were entitled to the verdict; this was refused.

In his general charge, Judge Graham said :—

\* \* \* "That Mr. Beetem was engaged in buying and selling stock, and that to a very considerable amount, appears to be very clearly proved by Mr. Beetem's correspondence with his bankers and brokers, and we do not understand that this is controverted. We have no evidence of what occurred between the parties at the time of purchase and sale. No one appears to have been present, and this question is submitted to you whether Burkholder at the time he purchased knew the stock was Beetem's, or considered that he was purchasing from Beetem, and whether he knew that Beetem was dealing in stocks at the time." \* \* \*

"The defendants insist that the plaintiff cannot recover in this case because a re-assignment was not tendered before suit brought. The plaintiff tendered a re-assignment at the former trial, and also at the present trial, and under the circumstances of this case, I do not consider the fact of a re-assignment before suit brought, essential to enable the plaintiff to recover." \* \* \*

The verdict was for the plaintiff for $4069.50.

The defendants removed the case to the Supreme Court.

They made there the following assignments of error :—

1, 2. The answers to the plaintiff's 2d and 3d points.

3. The answer to the defendants' 1st point.

4, 5. The answers to the defendants' 2d and 3d points.

6. The answer to the defendants' 6th point.

7, 8. The answers to the parts of the charge above quoted.

*Henderson & Hays*, for plaintiff in error.—A retransfer, or a tender of a retransfer, of the stock sold before suit, was necessary: Pearsoll *v.* Chapin, 8 Wright 12; Duncan *v.* Lawrence, 12 Harris 154; Turnpike Company *v.* The Commonwealth, 2 Watts 433; Roth *v.* Laguerenne, 6 Casey 145; Flynn *v.* Allen, 7 P. F. Smith 482; Ritchie *v.* Summers, 3 Yeates 531; s. c. 6 Casey 147 in note; Fielder *v.* Starkin, 1 H. Bl. 19.

*W. H. Miller* and *W. M. Penrose*, for defendant in error.—As

[Beetem v. Burkholder.]

to the burden of proof upon the Act of April 15th 1850, when an act may, according to the circumstances, be lawful, or unlawful, it will not be presumed that the contract was to do the unlawful act; the contrary is the proper inference: Lewis v. Davison, 4 M. & W. 654; 1 Greenleaf's Ev. § 80; Maul v. Rider, 9 P. F. Smith 171; Johnson v. The City, 10 Id. 445; Best on Presumptions *64. As to the retransfer of the stock, justice could be done either by a conditional verdict, or by equitable power of the court to restrain execution: Babcock v. Smith, 11 P. F. Smith 427.

The law implies a promise to refund money had and received under an illegal contract where the plaintiff, seeking to recover such money, does not stand *in pari delicto* with the defendant: Addison on Contracts *67; Id. *150; 2 Starkie on Ev. *117; Domat, Les Lois Civ., tit. 18, § 14, pl. 5; Pearsoll v. Chapin, 8 Wright 12.

The opinion of the court was delivered, October 9th 1871, by

SHARSWOOD, J.—Wherever one of the parties to a contract has the right to rescind it, and elects to do so, before commencing his action to recover back the money which he has paid, he must give notice to the vendor and offer to return the thing sold. This was settled in the High Court of Errors and Appeals in 1804, in Summers v. Ritchie, 6 Casey 147, note; s. c. 3 Yeates 531, and has been uniformly adhered to; Turnpike Co. v. The Commonwealth, 2 Watts 433; Roth v. Crissy, 6 Casey 145; Pearsoll v. Chapin, 8 Wright 12. It is easily distinguishable from those cases where an action is brought to recover damages for deceit or for breach of the contract which are in affirmance of it; Borrekins v. Bevan, 3 Rawle 44; Flynn v. Allen, 7 P. F. Smith 482. "That a man should retain the property which he purchased," say the court in Summers v. Ritchie, "and at the same time recover from the seller the whole amount of the purchase-money—that he should be permitted both to affirm and annul the sale—is contrary to reason, to justice and to the authorities which have been produced on the argument." It was recognised, however, as an exception to the rule in Babcock v. Case, 11 P. F. Smith 427, that if the thing, the consideration of which is sought to be recovered back, be entirely worthless, there is no duty to return it. The soundness of that determination cannot be questioned: *Lex neminem cogit ad vana seu inutilia.* This may sometimes be —as it was in that case—a mere question of law. What had been sold the law adjudged to be an utterly worthless tax title, under a sale of seated land as unseated. It would have been a waste of time, labour and paper to have reconveyed it, and a mere idle ceremony to have tendered a deed. The same law would hold when forged bank notes or other counterfeit securities are the subject-matter of the contract. No honest use could be made

[Beetem *v.* Burkholder.]

of them by the vendor, and they need not therefore be returned or tendered. Ordinarily, however, it is a question of fact for the jury, as where there have been sold, under circumstances entitling the vendor to rescind, shares of stock of a company entirely insolvent, or which has become insolvent, and the shares valueless in point of fact before suit. If the shares of the Glenville Coal Company, which were the subject of the sale in this case, when the contract was rescinded and the suit brought, were of no value, and the jury had so found, the principle of Babcock *v.* Case would have applied. It was not intended in that case to overrule former decisions, but to recognise that where their reason did not apply, the rule itself should cease. It was not held or intimated in that opinion, that a tender or offer to return the thing on the trial was in all cases sufficient. "We do not impinge," said Chief Justice Thompson, "on the case of Pearsoll *v.* Chapin, 8 Wright 12. That case was well decided on its facts." In Pearsoll *v.* Chapin it was held that where a sale of land has been induced by the false and fraudulent representations of the vendor, the vendee must first tender a reconveyance before he can recover back the price paid. "He (the plaintiff)," said Chief Justice Lowrie, "is not suing for a rescission or to obtain one, but for the results or consequences of a rescission, on the ground that he has already exercised his right to rescind given him by the law." The technical reason undoubtedly is, that the plaintiff's title to recover must be perfect when his suit is commenced. This is a very simple and intelligible rule, applicable in all cases, which it would be dangerous to innovate upon: Thomas *v.* Shoemaker, 6 W. & S. 179; Duncan *v.* Lawrence, 12 Harris 154. But a substantial reason for requiring a return or tender before suit, where the party assumes the right to rescind a sale, is that he may not play fast and loose down to the last moment. The defendant should have the option to join in the rescission, and take back the property at the earliest period. He must have notice, which is given to him when the thing is offered back and the price paid demanded. We think, therefore, that there was error in the answers of the learned judge below to the plaintiff's second and third points, and to the defendant's first point, and in the general charge as specified in the first, second, third and eighth assignments of error. We discover no other error. The *onus* of proving that Burkholder was a *particeps criminis*, and made the contract, knowing that Beetem the vendor was violating the law, was clearly upon the defendants. The primâ facie presumption is always in favor of innocence, so much so, as sometimes to require the opposite party to prove a negative: 1 Greenl. on Ev., § 80. If, as complained of in the seventh assignment, the learned judge submitted a question to the jury, of which there was no evidence,

[Beetem *v.* Burkholder.]

it did the plaintiffs in error no injury, for the burthen of proving that fact was upon them.

Judgment reversed, and *venire facias de novo* awarded.