# Sebring *v.* Niles Fire Brick Co., Appellant.

*Vendor and vendee—Suit for balance of purchase money—Misrepresentations as to boundary—Burden of proof—Evidence—Return of consideration—Contract—Laches—Estoppel.*

1. In an action to recover balance of purchase money for land, where defendant sets up as a defense alleged misrepresentations by plaintiff as to a boundary, the burden is on defendant to prove not only that the representations were made by plaintiff, but also that they were untrue, and that defendant believed in their truth and acted upon them to his injury.

2. In such case defendant cannot assert that he acted promptly in disavowing his liability, where it appears that, over a year after it was definitely discovered that there was a mistake in the boundary, he paid a second installment of the purchase money to plaintiff.

3. Where a party has a right to rescind a contract and elects to do so, he must give notice to the vendor and make an offer to return the property before suit to recover back his money, unless the thing which was the consideration of the contract is utterly worthless.

Argued January 30, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 41, Jan. T., 1928, by defendant, from judgment of C. P. Center Co., Sept. T., 1924, No. 187, for plaintiff n. o. v., in case of John P. Sebring v. Niles Fire Brick Co. Affirmed.

Assumpsit for unpaid purchase money and royalties. Before KELLER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant. FURST, P. J., entered judgment for plaintiff n. o. v.

*Error assigned,* inter alia, was judgment n. o. v., quoting record.

*Ellis L. Orvis,* with him *Arthur C. Dale* and *W. D. Zerby,* for appellant.—A vendee may set up as a defense the vendor's misrepresentation as to boundary line: Wilson v. Ott, 173 Pa. 253; Braunschweiger v. Waits, 179 Pa. 47; Wolf v. Christman, 202 Pa. 475; Pope v. Michel, 189 Pa. 125; Sulkin v. Gilbert, 218 Pa. 255; Browning v. Rodman, 268 Pa. 575.

Defendant's evidence required a submission of the cause to the jury.

*Newton B. Spangler,* with him *Ivan Walker,* for appellee.—The court was justified, under the evidence and pleadings, in entering judgment, notwithstanding the verdict, in favor of plaintiff: Southern Develop. Co. v. Silva, 125 U. S. 247; Young v. Housing Corp., 86 Pa. Superior Ct. 557; Wright v. Leather Co., 257 Pa. 552; Babcock v. Case, 61 Pa. 427; Morrow v. Rees, 69 Pa. 368; Beetem v. Burkholder, 69 Pa. 249; Bailey v. Snyder, 13 S. & R. 160; Farmers', etc., Bank v. Galbraith, 10 Pa. 490; Dobkin v. Landsberg, 273 Pa. 174.

OPINION BY MR. JUSTICE FRAZER, March 12, 1928:

This dispute arose over alleged misrepresentations by Sebring, the owner of a tract of mountain land in Cen-

ter County, as to the exact location of a boundary line between it and adjoining property of others. The Sebring land contains large deposits of ganister rock, one-third of which deposits were bought and the remaining two-thirds leased, under an indenture of sale and lease, by T. E. Thomas, acting at the time for the Niles Fire Brick Company, defendant and appellant here, of which he was then president. Shortly after consummation of the transaction, Thomas conveyed and assigned his entire interest in the property to his company. It was subsequently discovered that a strip of land about 245 feet in width, comprising the eastern boundary line, was not in fact a part of the Sebring property, but belonged to an adjoining tract, owned by the Harbison-Walker Refractories Company. The dispute, arising over the correctness of the boundary, not being adjusted between the parties concerned, payments under the contract were refused by the fire brick company and plaintiff brought suit to recover the sum of $3,200 with interest, representing unpaid purchase money and royalties due and payable. The case was tried before a jury and a general verdict rendered for defendant. Plaintiff moved for a new trial or for judgment non obstante veredicto, and, after hearing, the lower court, refused a new trial, but directed judgment for plaintiff notwithstanding the verdict, with interest and costs. From that judgment this appeal is taken.

Appellant in its affidavit of defense alleges misrepresentations by Sebring as to the property's eastern boundary line,—that it is not the true boundary; that the actual line shows the strip of 245 feet in width claimed by plaintiff to be a part of his land, was in fact a part of the Harbison-Walker tract; that the major portion of the flow of the ganister rock lay on the land within this strip; that the rock on the remaining portion of the Sebring property was inferior in quality and inadequate in quantity; that this state of affairs did not warrant the completion and operation of a plant for the mining and

shipping of the rock, and that, having gone to much expense by the partial construction of such plant defendant had suffered serious financial loss, in addition to being deprived of the amount and quality of rock stipulated for under the terms of the contract of lease and sale.

It is quite clear, from the record, and admitted by appellant, that there is no element of fraud connected with this controversy, that Sebring, in insisting on the eastern boundary line as located at the point he claimed it to be, was unintentionally and honestly mistaken; and that neither he nor any one else hindered defendant from making whatever investigations of the rock and boundaries it might desire.

The real question for determination is not whether appellant was induced to purchase and lease the ganister rock by the mistaken representations of the owner of the premises, but whether defendant company relied upon and accepted those representations as sufficient and complete grounds for becoming a party to the contract of sale and lease, which it now seeks to rescind. That it did not place such reliance upon Sebring's designation of the boundary is clearly and undeniably disclosed by the evidence. In fact, it is plainly apparent, as the learned court below declares, that the "question of the true location of the eastern boundary of the Sebring tract became a disputed subject from the very first time defendant's representatives went on the ground." Two examinations of the line were actually made by the Niles Fire Brick Company weeks before execution of the contract. On the first investigation, made by the superintendent of defendant company and others, it was known that the Harbison-Walker Company laid claim to the strip in dispute, along the eastern boundary, and, as the superintendent testified, at that time "the question came up that Harbison-Walker were over Sebring's property about seventy-five feet" and "had taken the cream of the stone out there." The following day the

same superintendent again went over the land, and informed Sebring that the Harbison-Walker "line even ran further than the tract referred to." Sebring however insisted that his representation of the boundary was correct. Finally, at a third examination, including a survey, made about six months after the execution of the contract, it was found the strip in question was a part of the Harbison-Walker property, and not a part of the Sebring land. Here then were two examinations of the boundary made by appellant before execution of the contract, a proceeding which clearly proves that not only was appellant not relying upon the owner's representations, but was so far from resting upon his accuracy that it practically repudiated his designation of the line from the start and relied upon its own investigations, with the result, as the learned trial judge observes, "the nearer they came to the execution of the contract the more certain it was that the Niles Fire Brick Company's engineers and agents were convinced that there was error in the location of the line and the quantity of ganister in the flow."

The indenture of sale and lease contained no warranty, and if appellant neglected to extend sufficiently its investigations previous to closing negotiations, that default was an error for which it alone is responsible. Every necessary means of acquiring exact information and measurements were at hand, equally available to defendant as to plaintiff, no hindrances were interposed to the making of ample investigations, and the fact that it failed to locate the correct line by proper survey before the contract was signed is a negligence to be laid at their own door. In Mahaffey v. Ferguson, 156 Pa. 156, 169, quoting from Slaughter v. Gerson, 13 Wallace 383, this court said: "A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties and the subject of

purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations."

It is sufficient answer to appellant's contention that it acted promptly in disavowing its liability under the terms of the contract, to note the fact that, even after expiration of one full year following its execution, and four months after the third examination of the boundary at which it was definitely discovered the strip in question belonged to the Harbison-Walker Company and not to Sebring, it made its second payment to plaintiff of purchase money and royalties, amounting to $1,400. Nor was there a reconveyance nor offer of reconveyance. Where a party has a right to rescind a contract and elects to do so, he must give notice to the vendor and make an offer of return before suit to recover back his money, unless the thing which was the consideration of the contract be utterly worthless: Beetem's Administrators v. Burkholder, 69 Pa. 249. In the present case, the testimony of experts in geology and in the making of analyses of rock substances, and of those familiar with deposits and flows of ganister rock, shows that extensive quantities of this rock exist on the Sebring land not included in the Harbison-Walker portion; and since appellant has elected to retain possession of the rock bought and leased by it, the conclusion seems inevitable that it has found the consideration under the contract far from worthless. As the court below very justly observes, "Certainly the Niles Fire Brick Company cannot say that the property was worthless, and in fact its very position indicates acknowledgment that the property has real value; but it takes the position that it can keep the property, disregard its contract and, even without fixing values, claim it has paid enough for it."

The evidence shows substantial consideration left; and if depreciation existed, by reason of deprivation of ganister on the Harbison-Walker strip, it is not to be

charged to plaintiff. It was the misfortune of defendant company to enter into a contract after learning that the representations of Sebring were erroneous. The results of the two examinations of the boundary some weeks before execution of the contract were certainly sufficient to put defendant on guard. It had at the commencement of the transaction ample reason to believe the owner of the adjoining land was disputing the line as claimed by Sebring. It deliberately faced the opposing claims of parties with whom it had no contract and whose claims, if promptly and properly investigated, it would have learned were indisputable. Its actions are wholly inconsistent with the claim of being misled by plaintiff's statements. The defense set up was an affirmative one and the burden was placed on defendant to prove not only that the representations were made by plaintiff but also that they were untrue and that defendant believed in their truth and acted upon them to its injury: Cooper v. Gasteiger, 278 Pa. 544. The evidence in the present case is conclusive that defendant neither believed the statements of plaintiff as to the boundary line to be true nor acted upon them. The injury it sustained, if any, was the fruit of its own knowledge and acts.

Judgment is affirmed.