## LOVE v. METROPOLITAN LIFE INS. CO.
### Civ. A. No. 8371.

United States District Court
E. D. Pennsylvania.
July 13, 1951.

See also, 8 F.R.D. 583.

Harry Norman Ball, Philadelphia, Pa., for plaintiff.

Owen B. Rhoads, Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

This case arises as an action on a life insurance policy by the widow. of the insured. The policy had been issued by the Metropolitan Life Insurance Company on May 17, 1946 and the insured died on the following July 31. The defendant has refused payment alleging that the insured made false statements in his application, fraudulently inducing the issuance of the contract of insurance. The jury returned a general verdict for the defendant, and in addition answered in the affirmative the following interrogatories:

"In his application for an insurance policy did the insured give answers which were, in fact, false, knowing them to be false when he gave them; or did he deliberately fail to furnish details asked for with the intention of concealing the truth, thereby behaving in bad faith?".

"Did the insurance company rely on the answers given by the insured in his application in issuing the policy to him?"

The plaintiff now moves for judgment n. o. v. or, in the alternative for a new trial.

The physical examination conducted by the defendant's doctor did not reveal a heart condition, from which the insured died. In his application for the policy (the answers being in the handwriting of the defendant's medical examiner), the insured denied that he had ever had any disease of the heart. In answer to the question, "Have you ever had any ailment or disease of the stomach or intestines, liver, kidneys, or genito-urinary organs?" the insured replied that he had had a "stone

of the left ureter" in 1941; after the direction to state the "name and address of every physician consulted", he answered, "Chester Hospital—recovered". To the question, "Have you ever had a surgical operation?" he answered, "Yes. Appendectomy. Removel of stone left ureter; 1940, 1941 * * *"; and after the direction to state the "name and address of every physician consulted", he responded, "Recovered—Taylor Hospital, recovered—Chester Hospital." To the question, "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by within the past five years? If none, so state", the answer was "None". A report made to the defendant by an independent retail credit company indicated that the insured had not lost any time from work.

In fact, however, the insured had suffered from heart disease, having consulted a prominent specialist, and having lost 62 days from work beginning January 7, 1944, because of a "coronary thrombosis", and 48 days beginning September 14, 1944, as the result of "coronary disease".

In his motion for a new trial, plaintiff avers that the verdict was based upon interrogatories which were contrary to the law in the case. Upon a review of the record, the court has concluded that while the interrogatories correctly reflected abstract principles of law, they did not adequately present the law relevant to this particular case. The questions presented to the jury should not have been merely whether the insured knowingly made false representations (but see Magaw, "Representations in the Law of Life Insurance", 11 Temple Law Quarterly 463), and whether the defendant relied on them; the jury should have been asked whether the defendant had or ought to have had such notice of the facts as to estop it from asserting a defense in connection with the misrepresentations.

Ordinarily, fraudulent representations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence. See Emery v. Third Nat. Bank, 314 Pa. 544, 547, 171 A. 881. In other words, the hearer may be charged with a knowledge of facts which he ought to have known. The question, then, is whether the defendant had such knowledge which would lead a prudent insurer to further inquiry, and whether such inquiry would have resulted in the discovery of the true facts.

The independent credit investigation which the defendant made disclosed that the insured had not lost any time from work. From the face of his application, however, it was apparent that he had lost some time by virtue of his two periods of hospitalization. Should this inconsistency have caused the defendant to make further inquiry? If such inquiry had been made, the defendant might easily have been discovered that the records of the insured's employer indicated two prolonged periods of absence as the result of a heart condition. The question should have been left to the jury, and if the jury had concluded that the independent investigation disclosed facts which placed upon the insurer the duty of further inquiry, and that such inquiry would have revealed the actual facts, the defendant would have been equitably estopped from asserting the defense of reliance on false representations. John Hancock Mutual Life Ins. Co. v. Cronin, 139 N.J.Eq. 392, 51 A.2d 2, 169 A.L.R. 355; annotation at 169 A.L.R. 361; Columbian National Life Ins. Co. of Boston v. Rodgers, 10 Cir., 116 F.2d 705. The doctrine is entirely consistent with the Pennsylvania law of fraudulent representations, which holds that the hearer, to be allowed to avoid a contract, must have relied upon and accepted untrue representations as sufficient and complete grounds for becoming a party to it. Sebring v. Niles Fire Brick Co., 292 Pa. 412, 141 A. 237. Where the hearer is put on notice that the facts may be otherwise than as represented, he cannot be said to have so accepted and relied upon the representations.

644

■ Similarly, the jury should have been permitted to decide whether the answers of the insured in his application for a policy should have put the defendant on notice to make further inquiry. In reply to questions, the insured stated that he had had a stone removed from his left urefer, and an appendectomy. Then, under the direction to state the "name and address of every physician consulted", the names of two hospitals were listed, without naming any physicians. In answer to a subsequent question asking what hospitals or physicians, not named in the prior answers, he had consulted or been treated by within the past five years, he answered, "None". Inasmuch as no doctors at all were named, in response to specific questions directed at determining their names, it is a permissible inference that the answers were ambiguous, requiring the defendant to make further inquiry, and precluding reliance on the answers as given. Cf., Phoenix Mutual Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644; Lebanon Ins. Co. v. Kepler, 106 Pa. 28; Meyers v. Lebanon Mutual Ins. Co., 156 Pa. 420, 27 A. 39; and see Walter v. John Hancock Mutual Life Ins. Co., 160 Pa.Super. 532, 535, 52 A.2d 366. For if the defendant had required the names of the doctors, it might have been able to learn of the insured's condition from his family physician, who attended him at the hospitals. If the ambiguity of the answers was such that a reasonably prudent insurer would have undertaken a further inquiry which would have led to a disclosure of the true facts, and none was undertaken, then it is entirely equitable to find the insurer estopped from reliance on the answers given. The defendant in such a case, should have known the true facts and cannot be now heard to claim reliance on any misrepresentations.

Accordingly, a new trial will be granted on the ground that the interrogatories did not adequately present the case to the jury. And inasmuch as the issues are for the jury, judgment n. o. v. will be denied.