## Mitsios, Appellant, v. Morios.

*Trespass—Taking possession of premises belonging to another—Case for jury.*

In an action of trespass, resulting from the unlawful taking possession of the plaintiff's premises in his absence and the consequent loss of profits, the case is for the jury, where the defendant, without authority, took the keys of the plaintiff's restaurant from the plaintiff's agent, locked the doors and closed the same for two days. In such case, the defendant committed a trespass and the court should have submitted the case to the jury with instructions to that effect.

*Trials—Depositions of witnesses—Admissibility.*

The depositions of a witness about to leave the jurisdiction are admissible, where there is sufficient evidence to establish the fact that the witness was about to leave the jurisdiction at the time the depositions were taken and that, although since the taking of the first depositions he had been within the jurisdiction of the court at various times, he was not there at the time of the trial.

Whether the evidence supports the conclusions that depositions should become admissible is a question of law, to be determined by the trial judge. Where, however, the only evidence supporting the exclusion of the depositions is the statement by opposing counsel that he saw the witness in the county a week before the time of trial, there is not sufficient testimony to sustain the conclusion of the court that the depositions were inadmissible, and their exclusion constituted reversible error.

Argued November 10, 1920. Appeal, No. 304, Oct. T., 1920, by plaintiff, from judgment of C. P. Lancaster Co., Oct. T., 1919, No. 56, on verdict for defendant in the case of Earnest Mitsios v. Angelo Morios. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Trespass to recover damages for entering plaintiff's place of business and closing the same without authority. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the defendant. Plaintiff appealed.

*Error assigned* was the charge of the court and refusal to allow certain depositions of plaintiff's witness to be read.

*B. F. Davis*, and with him *Benjamin F. Davis, Jr.*, for appellant.

No appearance and no printed brief for appellee.

OPINION BY LINN, J., July 14, 1921:

The alleged trespass took place July 3, 1919. The plaintiff Mitsios and defendant Morios had been partners about four months before. Thereafter, Mitsios alone conducted a restaurant called the Rainbow in premises leased by him on King Street, Lancaster, and

Opinion of the Court.    [76 Pa. Superior Ct.

described by him as a "real up to date place." About
June 30, 1919, he departed from Lancaster in search of a
cook and left Stephen Manuel in charge of the Rainbow
alleging that Manuel's "duty was to operate the restau-
rant and attend to the wants of the customers until the
plaintiff returned." In his statement of claim he also
alleged that during that absence "defendant with force
and arms, broke and entered into plaintiff's place of
business, and by force and duress obtained the key or
keys to the plaintiff's premises as aforesaid, from the
said Stephen Manuel, plaintiff's employee, and closed
the place, so that no business could be conducted at the
said place, and the plaintiff's business was broken up
and destroyed by reason thereof. This was between
June 30, 1919, and July 4, 1919. Also during the time
aforesaid, in the county aforesaid, in the said restaurant,
the defendant, with force and arms, seized and took, or
caused to be seized and taken or wantonly destroyed,
or caused or suffered to be destroyed, divers goods and
chattels, belonging to the plaintiff, to wit: one steam
table, two coffee urns, lot of milk, cream, meat, butter,
vegetables, fruits, bread, pies, cakes, etc., used in oper-
ating a restaurant being of the value of four hundred
dollars ($400) and carried away and converted or dis-
posed of the same to his own use, or damage or de-
stroyed the said goods and chattels, so as to render them
useless, the same being due to wantonness on the part
of the defendant."

Defendant Morios testified that Mitsios owed him
$300 and that on July 3, 1919, accompanied by a real
estate agent he went to the Rainbow to collect the debt.
On arrival, they found Mitsios absent and Manuel there.
He also testified they were told by Manuel that he didn't
know when his employer would return and that he
Manuel was "going to quit" that night. We quote de-
fendant's reply to Manuel as defendant states it. "I said
'What are you going to do with the keys?' He says, 'I
don't know.' So Mr. Gantert [the real estate agent] says

to him, 'You hand the keys over to us, because he owes money to us.' 'Well,' the fellow says 'I will think about it.' And then he says, 'I made my mind up to go,' and he opened the cash register, and took thirteen dollars and about forty-five cents, and he paid himself out eleven dollars for four-five days and a half, around there,—I don't know how long he was there—whenever he was down there. He handed me the keys and two dollars, and says 'When Ernest Mitsios comes back, you give it to him.' So, the next morning, I had a 'phone call from Charley Baker, and he says, 'Have you got the keys for the Rainbow Restaurant?' I says 'Yes.' He says 'Will you give it to Ernest Mitsios?' I says 'Yes, if he is in town.' He says 'He is in town.'" Baker called for Morios and the two went to the Rainbow and unlocked the door. Morios gave Mitsios the key and testified "I handed him the two dollars over. He didn't want to take the two dollars. He said 'No, you keep it.' I said 'I don't want it; it is your own money.' I put it on the counter. He threw it out the door. So, as he threw it out the door I thought I might as well pick it up." Referring to the time when he received the keys from Manuel, defendant testified that "all three together, we locked the place." This occurred about 4:30 or 5 o'clock in the afternoon. We need not now refer to the alleged damage described in the evidence, but two matters we must consider: 1, that a trespass was committed by defendant entitling plaintiff to some damage—even if only nominal, and, 2 that the learned court erred in refusing to permit plaintiff to put in evidence the deposition of Stephen Manuel taken as a going witness and filed.

1. Passing the evidence of damage, it is clear by defendant's own testimony that he committed a trespass and the court should have so instructed the jury. He had no right to lock up plaintiff's place of business. While plaintiff could not complain of defendant's call at the Rainbow to collect the debt, he was not bound to approve defendant's conduct in obtaining the keys from

Manuel and closing it. He kept it closed from that afternoon until sometime next morning. Defendant took control of plaintiff's property from his servant, who was obviously without authority to deliver it. "You hand the keys over to us because he owes money to us," was defendant's demand and the servant complied with it. Defendant's conduct was an invasion of plaintiff's rights to which he was not bound to submit.

2. We are also constrained to hold that the learned court erred in excluding Manuel's deposition. It was taken pursuant to the rules of court February 13, 1920, and filed February 21, 1920. Defendant's counsel attended the examination and cross-examined the witness. It contained relevant testimony supporting plaintiff's allegation. The learned trial judge excluded the deposition because, he said, he was not "satisfied [1] that the witness, at the time the deposition was taken, was about to leave the jurisdiction, and [2] was absent at the time of the trial and [3] could not be secured. The facts, in our judgment, did not sufficiently support that claim, and, therefore, it was not improper to exclude the deposition." The rule of court provided "No depositions shall be allowed to be read in evidence unless the party offering the same shall satisfy the court that the witness, if a resident of the state, is either aged, infirm or a way-going witness, and could not, after reasonable pains taken for that purpose, be secured to testify at the time of the trial." While in such inquiry we accept the finding of fact made below, we must examine the evidence to see whether it supports the finding. "A deposition is, unquestionably, but secondary evidence, and admissible on proof of its having been taken under a competent authority, on due notice, and in a proper manner; and also, on proof that the contingency, for which it was intended to provide, has actually happened:......" Pipher v. Lodge, 16 S. & R. 214, 220. The fact found by the court below was that the contingency in which the deposition should become admissible had not actually happened.

590, (1921).] .          Opinion of the Court.

Whether the evidence supports that conclusion is a question of law. That evidence was as follows: In the excluded deposition Manuel testified he was going to Akron, Ohio. After the trial and in support of the motion for a new trial, his deposition was again taken and he then testified that after making the first deposition he went to Akron, Ohio, and had since been at various places and had not been in Lancaster until June 3, 1920; that when the case was tried he was in Chester, Pa. When the deposition was offered, a witness, Hartofeles, testified that Manuel went to Ohio on the day the deposition was taken and that he knew people who had received letters from him, and that he had seen such a letter. He also said he had heard Manuel was then in Chester, Pa. Mitsios himself testified that he made a search for Manuel for the purpose of having him at the trial and was advised that he was not in Lancaster; that he had heard Manuel was in Akron, Ohio, and that on the morning of the trial, he had heard he was then in Chester. B. F. Davis, Jr., attorney for plaintiff, testified that he aided Mitsios to serve the subpœna; that Manuel's name was on it, and that he searched for him for the purpose of serving the subpœna but couldn't find him. One, Pepas, testified that Manuel was in Chester and produced a letter from him postmarked Chester, February 25, 1920. Against all that testimony there is only the evidence of Howard J. Lowell, attorney for defendant, who testified that on February 27, 1920, at 7:30 p. m., he saw Manuel with three other Greeks standing on the street in Lancaster. The case was tried March 9, 1920. Assuming that the witness was in Lancaster on February 27th as Mr. Lowell testified, that fact is not inconsistent with his journey to Akron, Ohio, or to some other place, and with his absence from Lancaster when the subpœna server searched for him and also when the case was tried ten days after Mr. Lowell says he saw him. There is no evidence but Mr. Lowell's supporting the exclusion of the deposition. Considering all the evi-

dence on the subject Mr. Lowell's testimony is not sufficient to sustain the conclusion of the court. The first, fourth, eighth and ninth assignments of error are sustained and the judgment is reversed with a venire.