Jerominski, Appellant, v. Fowler, Dick & Walker.

Argued April 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas C. Moore,* for appellant.

*William S. McLean,* with him *James P. Harris, Jr.,* and *James, McLean, Silverblatt & Miner,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 4, 1954:

The appellant instituted this action in trespass to recover for injuries which she alleged were sustained by her on January 19, 1948 in the defendant's department store. This is the second time the case has been before us. See *Jerominski v. Fowler, Dick & Walker,* 372 Pa. 291, 93 A. 2d 433. At the first trial the court granted defendant's motion for a compulsory nonsuit. The plaintiff appealed from the refusal of the court below to lift the nonsuit and we reversed with a procedendo, having decided that defendant's negligence and plaintiff's contributory negligence were questions of fact for the jury. At the second trial of the case the plaintiff recovered a verdict in the sum of $6,000. Upon the defendant's motion the court en banc set aside the verdict and awarded the defendant a new trial. The plaintiff appeals from that order.

The facts show that the plaintiff on the above date went to the defendant's store at about noon and took an elevator to the fourth floor. Not being able to purchase what she desired, she descended the stairway to the third floor. She testified that after she had proceeded down about four steps, her left foot went into something soft, causing her to fall to the bottom, a distance of some eighteen steps. First aid was administered at the store and she was sent home in a taxicab.

A short time thereafter she discovered she was bleeding vaginally. Two years and three months after the accident she underwent two operations which necessitated the removal of her appendix, right ovary and right fallopian tube. It was primarily for injuries to these organs that plaintiff sought to recover, since the only other injuries alleged were external bruises.

We will not attempt to review at length the testimony of the several witnesses but will advert only to the evidence essential to the determination of the only question before us: Was the court below guilty of a palpable abuse of discretion in awarding a new trial? It is unnecessary to cite the many cases wherein we have held that the action of the court below in granting a new trial will not be reversed except for a palpable abuse of discretion.

The reasons assigned by the court in ordering a new trial were: (1) that the verdict was contrary to the weight of the credible testimony and obviously based upon sympathy for the plaintiff; (2) the court was of the opinion that her alleged condition was neither caused nor contributed to by her fall, and (3) the credible testimony established that plaintiff's fall was not the result of defendant's negligence.

It appears that even though the plaintiff voluntarily consulted eight doctors subsequent to her fall, she only called two of them to establish the relationship between her injuries and the fall. Chiefly, she relied on the testimony of Dr. Nicholas Mauriello, a specialist in physical medicine, who first treated the plaintiff some two years after the accident and was the surgeon who performed the operations. He was the only doctor who would state that in his opinion her condition was due to trauma. The other doctor testifying on the plaintiff's behalf, Dr. Peter Posatko, first saw the plaintiff on February 10, 1948, about a month

after the accident. She complained at that time of pains in the lower abdominal region and of vaginal discharge. He found the presence of blood in her urine and referred her to Dr. Joseph Kocyan, an eminent gynecologist, who after an examination reported to Dr. Posatko that he was unable to find any pelvic pathology and that the plaintiff's bleeding might have been the result of a ruptured graafian follicle. Dr. Posatko admitted on cross-examination that a graafian follicle is a minute formation on the ovary and a rupture thereof was a normal occurrence during the menstrual cycle.

Dr. Mauriello's testimony in chief was largely discredited because on cross-examination he contradicted himself by subscribing to certain statements in a treatise by a distinguished authority in this field which were directly contrary to what he had testified. He also displayed a general evasiveness in answering questions.

The other doctors who treated the plaintiff following her accident were subpoenaed by the defendant. It is significant that of those who examined her in reference to abdominal pain none supplied any testimony favorable to plaintiff's contention, and four of them testified that their examinations disclosed no evidence of any condition caused by trauma. Dr. Lachlan Cattanach testified that on April 15, 1937, more than ten years prior to the accident, the plaintiff was admitted as a patient in the Surgical Department of Wilkes-Barre General Hospital for a possible sub-acute appendectomy because she had been complaining of abdominal pain of two days' duration. She was advised at that time to have a urogram made, which is an X-ray of the kidneys, urethra and bladder, because her urine examination indicated the presence of occasional red blood cells and pus. The urogram was

never taken because the plaintiff's mother signed a release and removed her from the hospital. Dr. Cattanach also examined her about a week after her fall but found no vaginal bleeding and could not say her condition resulted from the fall.

This history of a prior illness of substantially the same nature when considered in conjunction with the testimony of the payroll clerk and the industrial nurse at her principal place of employment prior to the accident, regarding her many absences from work and her eventual withdrawal therefrom because of ill health, cast very substantial doubt upon the contention that her condition was the result of the fall.

Dr. Mauriello's testimony on which plaintiff was forced to rely, was characterized by indefiniteness, inconsistencies and ambiguity. As a medical expert he was called upon to give testimony concerning matters outside the domain of ordinary experience and knowledge in order to enlighten the jurors and aid them in their conclusions. As we read his testimony, rather than assist them, he enveloped them in a maze of medical terminology from which they could only emerge utterly confused. After scrutinizing the record with the utmost care, we feel that under all the circumstances the court had ample reason for awarding a new trial.

It appears from the record that the deposition of Che Hoyt, a going witness, was taken on January 28, 1949, pursuant to an order of court. It was admitted into evidence at the second trial of this case on March 17, 1953 over defendant's objection that it should not be admitted without some showing by the plaintiff that the witness was still unavailable. It is axiomatic that the oral testimony of a witness in court is always preferred over a deposition which is merely secondary evidence and not admissible unless it is proven that

better evidence cannot be produced. It will be incumbent on the plaintiff at the next trial to show the unavailability of the witness or the exercise of due diligence on her part in attempting to locate her. See *Mitsios v. Morios,* 76 Pa. Superior Ct. 590; 5 Anderson Pa. Civil Practice 750.

The order granting a new trial is affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The majority of the Court in this case climbed to the top of the stairs of logic and then gravely climbed down again. In November, 1952, this case came to us on appeal from a decision of the Court of Common Pleas of Luzerne County which had entered a compulsory nonsuit against the plaintiff. We heard the arguments, we read the briefs, we contemplated, considered, pondered, studied and scrutinized all the various facets of the case and, in due time, rendered a decisive decision, namely, "We hold that the defendant's negligence and plaintiff's contributory negligence were entirely questions of fact for the jury to determine, and the order of nonsuit is therefore reversed with a procedendo."

The nonsuit was removed, the procedendo took effect, and the case went to trial—for the second time. The second trial lasted four days, able counsel fought back and forth before the jury box, the Trial Judge charged the jury and the jury returned a verdict. The Majority now declares it is not satisfied with the verdict and orders that the case be tried again. Why? Today it takes a position contrary to that announced on January 5, 1953, for, if the plaintiff proves a prima facie case, and a jury sustains that proof, the plaintiff is entitled to hold the verdict.

In his exhaustive charge, in the second trial, the Trial Judge said: "If after considering all the testi-

mony in this case you are of the opinion that the plaintiff has not established by the fair preponderance of the credible testimony that her fall resulted from defendant's negligence or lack of care, there can be no recovery by the plaintiff, and your verdict should be for the defendant. So also, if you find that the defendant was negligent, but that the plaintiff was guilty of contributory negligence, that her failure to use proper and reasonable care as she descended the stairway, contributed in any degree to the happening of the accident, there can be no recovery, and your verdict should be for the defendant. On the other hand, if you determine that the plaintiff's fall was brought about by negligence or lack of care on the part of the defendant, and that she, the plaintiff, was entirely free of contributory negligence, then she is entitled to recover under the rules which I shall hereafter give you."

With this charge in its ears, the jury deliberated and returned a verdict in the sum of $6,000 for the plaintiff. The Trial Judge found the verdict displeasing. He said it was against the weight of the evidence and he ordered a new trial. The Majority of this Court has affirmed that decision.

How many times must a case be tried before the conclusion becomes stationary? Six years have passed since Helen Jerominski stepped on a greasy substance on the stairs of the defendant's store and ended up at the bottom of the staircase 22 steps away. How often must she continue to fall down those stairs in relating the story of her misfortune, before she can finally rest?

The plaintiff testified that she was internally injured as a result of that fall. Medical testimony confirmed that a woman can be injured internally by plunging down steps, although we scarcely need the wisdom of a doctor to inform us that something may

go wrong inside a woman—or man—who topples, tumbles and twists in a pitching descent down a steep flight of stairs.

The Majority Opinion, which reads like a gynecological report, does not change the solid and substantial fact that the jury in the court below passed on all the outer as well as the inner events in Helen Jerominski's life, —and rendered a verdict on those events. I see no reason why the intimate details already publicly proclaimed should be paraded before another jury.

The Judge's charge, which certainly could not be characterized as one showing partiality toward the plaintiff, covered everything so clinically described in the Majority Opinion. After his microscopic review of the medical testimony, the Trial Judge said: "Now, members of the jury, was plaintiff's fall caused by her stepping on a slippery substance on the stairway left there by the defendant's negligence or lack of reasonable care? If not, plaintiff cannot recover, and your verdict should be for the defendant. Was plaintiff's fall contributed to in any degree by her own negligence or lack of care? If so, she cannot recover. If you find that the fall resulted from the defendant's negligence or lack of care, and that the plaintiff is free from contributory negligence, you then consider the question of damages."

After specifically indicating that the jury must scrupulously hew to the line of an impartial decision, the Trial Judge then took up eight different points submitted by the defendant, in each one of which the jury was shown how it could find in the defendant's favor. The Court affirmed all these points. In spite of that, the jury still returned a verdict for the plaintiff.

Why must the case be tried again? Must the plaintiff again be subjected to the embarassment, torment

and worry of a trial just because the Trial Judge, if he were sitting on the jury, would have appraised the facts differently from the twelve persons who have already passed on those facts?

The court below, in ordering a new trial, declared that the jury's verdict was faulty because it is "obviously based upon sympathy for the plaintiff." The paradox in this statement is that the Trial Judge declares that he, too, feels "sympathetic toward the plaintiff." If the judge entertains a sympathy which can only come from the evidence, because there is no evidence that he knows the plaintiff outside of seeing her in the courtroom, then he cannot condemn the jury because they also, in the exercise of the most normal human sentiment based upon the facts of the trial, feel a sympathy because of the pain and misery the plaintiff has been subjected to as the result of the negligence of the defendant in this case.

The lower court, in ordering a new trial, declared that (1) The verdict was contrary to the weight of the evidence and obviously based on sympathy for the plaintiff; (2) The plaintiff's condition was not caused by the fall; and (3) The credible evidence established that plaintiff's fall was not the result of defendant's negligence.

So far as Reason No. 3 is concerned, the Majority, as I indicated at the beginning of this Dissent, is backing down the stairs of logic and reason which it had mounted when we unanimously decided on January 5, 1953, that the credible evidence was sufficient to allow a jury to believe that the plaintiff's fall *was* the result of the defendant's negligence.

With regard to Reason No. 2, it is to be observed that the plaintiff's fall on January 19, 1948, was of such violence that she was unconscious when she was

picked up at the bottom of the stairs. She was taken home in a taxicab and there suffered an internal hemorrhage. Two or three days later she became very ill and visited a Dr. Riofski who treated her. On February 10, 1948, she was examined and treated by a Dr. Posatko for the same internal trouble. She was later treated also by Dr. Kocyan. On April 12, 1950 she was examined by Dr. Mauriello who had a Dr. Funke also examine her. On May 24, 1950, Dr. Mauriello operated.

At the trial Dr. Mauriello was asked: "Now, Doctor, assuming that this girl received a fall down a number of steps in the Boston Store in this City and struck her head and other parts of her body, and was rendered unconscious, regained consciousness, was bleeding vaginally, and whatever you say here, and on examination of her you discovered these conditions that you have already detailed, would you say that the occurrence in the Boston Store, the fall, was the competent producing cause of the injuries you have described?" Dr. Mauriello's answer was: "I do."

This answer, together with all the other evidence, established an unbroken chain of circumstances from the fall to the internal injuries, to the traumatic malady, to the operation, and to the verdict. What more must the plaintiff do in order to retain that verdict?

The Majority Opinion says that this Court will not reverse the granting of a new trial "except for a palpable abuse of discretion." A reading of the record in both trials shows, in my judgment, that a palpable abuse of discretion has been reached. When a judge orders a new trial because he feels "sympathetic toward" the person upon whom he presses the burden of a new trial, I believe it is the duty of this Court to declare that the Judge's discretion in that respect requires revision and the new trial must be rejected.

The plaintiff's attorney in his brief says: "This case cannot be tried again. The grant of a new trial is tantamount to the lower court sustaining its original nonsuit. It is pointed out that this accident occurred January 19, 1948, over *six* (6) years ago; that this case now has been tried twice. Plaintiff cannot produce any different or additional evidence at any subsequent trial."

In the interests of an orderly adjudication of the litigation which is here involved, the plaintiff should muster the necessary fortitude to undertake the third trial which the lower court and the Majority of this Court have ordered. As it is said that there is no lane that has no turning, it is to be hoped that there is no flight of stairs in the law, no matter how steep or extended, that does not eventually take the perservering litigant to the landing of full and complete justice.