**In re Richard GROSS t/a B. Gross Pickling Co. and/or B. Gross Company sometimes known as B. Gross Pickling Company, Debtor.**

**Samuel M. BRODSKY, Interim Trustee, Plaintiff,**

v.

**Howard R. SCHNEPPER and Schnepper Pickle Corporation, Defendants.**

Bankruptcy No. 82–01727G.
Adv. No. 83–1910G.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 29, 1985.

David I. Grunfeld, Parker & Rutstein, Philadelphia, Pa., for plaintiff/trustee Samuel M. Brodsky.

Stephen T. Burdumy, Philadelphia, Pa., for defendants Howard R. Schnepper and Schnepper Pickle Corp.

Arthur E. Dennis, Philadelphia, Pa., for debtor.

Samuel M. Brodsky, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue in this case is whether an agreement signed by the debtor and the defendant constitutes a valid contract on

which the trustee can successfully bring an action for breach. For the reasons stated herein, we conclude that the document at issue is a valid contract which the defendant breached.

The facts of the case are as follows:[1] The debtor and Howard Schnepper ("Schnepper") signed an agreement in March of 1982, for the sale of the debtor's pickle business along with the accompanying accounts receivable and inventory valued in the agreement at $42,000.00. By the terms of the document the debtor agreed to run the pickle plant as Schnepper's employee for five years in exchange for a salary plus a percentage of the gross profits with a guaranteed minimum of $10,000.00 per year. Schnepper agreed to assume liability under one of the debtor's mortgages as long as the debtor did not breach the employment contract, and Schnepper further assumed liability for a maximum of $50,000.00 of the debtor's accounts payable and a $200.00 per week rental obligation. The debtor agreed to remain liable on the accounts payable to the extent they exceeded $50,000.00 and promised to indemnify Schnepper for any shortfall in the estimated value of the accounts receivable and inventory. At the time of the signing of the agreement Schnepper and the debtor intended to be legally bound by that document.

During the course of the negotiations which culminated in the March agreement, Schnepper chose not to be represented by an attorney although he was well informed of the debtor's financial difficulties since he had access to the debtor's business records. The debtor did not misrepresent any material fact about the status of the business.

For thirteen months after the sale, the debtor served as an employee to Schnepper, during which time the salary, rent, and mortgage obligations were paid by Schnepper in accordance with the contract. The debtor's business records indicate that $16,525.00 was disbursed on accounts payable

while accounts receivable totaled $17,551.15. The actual value of the inventory equals $19,820.81, which, when added to the value of the accounts receivable generates a $4,628.04 shortfall from the contract estimate.

At the end of the thirteen month period, Schnepper fired the debtor without apparent cause, after having paid him a $3,800.00 share of gross profits under the employment contract. Since the firing, the debtor has not received any funds from Schnepper.

The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") in April of 1982 although the case has since been converted to a chapter 7 proceeding. Seeking recompense for the alleged breach of contract, the trustee lodged the instant complaint against Schnepper. On the trial of the complaint, Schnepper was evasive and lacked credibility.

■ Before discussing the merits of the action before us, we first set forth the basis of our jurisdiction to hear the matter under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Act"). Section 104 of the Act amended 28 U.S.C. § 157 and provides that bankruptcy judges may hear all core proceedings. Section 157(b)(2) provides, in part, that, "Core proceedings include, but are not limited to— ... (C) counterclaims by the estate against persons filing claims against the estate...." Hence, we have held that the filing of a proof of claim by a creditor against the estate gives us jurisdiction under § 157(b)(2)(C) to address all claims brought by the debtor against that creditor. *Marketing Resources Int. Corp. v. PTC Corp.* (In Re Marketing Resources Int. Corp.), 43 B.R. 71, 72 (Bankr.E.D.Pa. 1984). In the controversy before us Schnepper has filed counterclaims in response to the trustee's adversary action. We hold that these counterclaims constitute claims against the estate under § 157(b)(2)(C) which give us jurisdiction to

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

adjudicate these causes of action as well as the debtor's case in chief against Schnepper. We may consequently enter a final order disposing of the controversy.

Commencing our discussion with the elementary, we note that a contract "is a promise or a set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes." *Restatement (Second) of Contracts* § 1 (1979); *Stentor Electric Mfg. Co. v. Klaxon Co.*, 115 F.2d 268, 271 (3d Cir.1940), *rev'd on other grounds*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The document at issue ostensibly bears all the trappings of a legally cognizable contract although Schnepper has raised two issues in hopes of clouding this perception. The first point is that the agreement is not a contract because it contains the statement that "[i]f this Memorandum Agreement is satisfactory to both parties, it should be signed and initialed and will be put into more formalized language." Schnepper contends that this quoted language requires us to conclude that the document at issue is not a contract. On the contrary, it is well settled in Pennsylvania that where the parties have settled upon the essential terms of the agreement and the only remaining act to be done is its formalization, that act is not inconsistent with the present existence of a contract. *Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 305 A.2d 689 (1973) *cert. den.*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). The parties' actions in conformity with the written agreement for thirteen months after the signing bolsters our finding that the parties intended to be bound by the agreement at the time of such signing. Hence, Schnepper's first basis for dispute is without merit.

Having addressed Schnepper's defenses to the contract action, we must now adjudicate his two counterclaims, in the first of which he claims that he purchased a company of no value, justifiably relying, to his detriment, on the misrepresentations of the debtor concerning the company's worth. Schnepper asserts that the debtor underestimated the indebtedness and accounts payable of the business while over-estimating his inventory and accounts receivable. In Pennsylvania, "where the hearer is put on notice that the facts may be otherwise than as represented, he cannot be said to have so accepted and relied upon the representations." *Love v. Metropolitan Life Insurance Co.*, 99 F.Supp. 641, 643 (1951). We have found above that, Schnepper had access to the debtor's business records prior to the agreement. Therefore "the hearer may be charged with a knowledge of facts which he ought to have known." *Id.* The Pennsylvania law of fraudulent representations holds that "the hearer, to be allowed to avoid a contract, must have relied upon and accepted untrue representations as sufficient and *complete* grounds for becoming a party to it." *Id.* Since Schnepper was on notice of any variance between the debtor's estimates of the business assets and liabilities, we cannot conclude that Schnepper was damaged by any reliance on the debtor's estimates. Furthermore, the contract terms, providing for the debtor's liability to Schnepper for any shortfall in value and the ceiling on Schnepper's liability, were safeguards favoring Schnepper for any contingent deficiencies in the debtor's estimates.

Couched in terms of "misappropriation," Schnepper's second counterclaim consists primarily of an allegation that the debtor pilfered Schnepper's inventory. Schnepper presented no substantiating evidence other than his visual assessment that his inventory was shrinking without a corresponding increase in sales. Since other employees had easy access to the inventory, on the standard of a preponderance of the evidence, we must conclude that there is no credible testimony that the debtor purloined the inventory.

Part of Schnepper's second counterclaim, which to us seems more akin to a defense to the debtor's contract claim, is a contention that he (Schnepper) is excused from paying the mortgage obligation because his firing of the debtor was justified because the debtor was an incompetent employee. Since the contract is for a term of years, Schnepper had no right to fire the debtor except for cause. *Lavin v. Goldwa-*

*ter,* 366 Pa. 599, 79 A.2d 266 (1951). Even though incompetence could qualify for cause, Schnepper offers no evidence of this deficiency other than to say that the debtor "did things differently." In the absence of more adequate proof, this aspect of the counterclaim is also meritless and therefore, Schnepper is not excused from his duty to pay the debtor's obligations as set forth in the contract.

For the reasons stated, we will uphold the trustee's claim for the $33,475.00 balance remaining on Schnepper's maximum liability for the accounts payable but we will reduce that sum by the $4,628.04 shortfall on accounts receivable and inventory for which the debtor is liable. Furthermore, the defendant is not relieved of his obligation to pay the mortgage referred to in the contract which currently has a balance of $35,853.49, nor is he relieved of his obligation to pay 10% of gross profits for the five year term of the contract on which the trustee has sought merely the contract minimum of $10,000.00 a year for five years which will be reduced by the $3,800.00 previously paid. Judgment will be entered in favor of the trustee and against Schnepper for $110,900.45.