**In the Matter of Richard GROSS t/a B. Gross Pickle & Co.**

**v.**

**Howard SCHNEPPER & Schnepper Pickle Corp.**

**No. 85–5354.**

United States District Court, E.D. Pennsylvania.

June 4, 1986.

---

Stephen T. Burdumy, Philadelphia, Pa., for plaintiff.

David I. Grunfeld, Philadelphia, Pa., for defendants.

### MEMORANDUM

O'NEILL, District Judge.

Gross filed a petition for reorganization under Chapter 11 of the Bankruptcy Code and the case has since been converted to a Chapter 7 proceeding. Trustee thereafter filed a complaint in the Bankruptcy Court against Schnepper and the Schnepper corporation alleging breach of contract. The United States Bankruptcy Court entered judgment in favor of trustee and against defendants and they now appeal.

### I.

On March 22, 1982, Richard Gross and Howard R. Schnepper signed a Memorandum Agreement for the sale of debtor's pickle business along with its accounts receivable and inventory. The Agreement provides that debtor would operate the pickle plant as Schnepper Pickle Corporation's employee for five years for a salary plus a percentage of gross profits with a guaranteed minimum of $10,000.00 per year. The corporation in turn agreed to assume debtor's (a) $42,000.00 bank obligation as long as debtor did not withdraw from Schnepper Pickle Corp.'s employ; (b) accounts payable subject to a maximum of $50,000.00; and (c) $200.00 per week rental obligation. Debtor agreed to remain liable on the accounts payable to the extent they exceeded $50,000.00 and promised to indemnify the corporation for any short fall in the estimated $42,000.00 value of the accounts receivable and inventory.

For the thirteen months following the sale, debtor served as Schnepper Pickle Corp.'s employee and the salary, rent and mortgage obligation were paid by the corporation in accordance with the terms of the Agreement. On April 6, 1983, Schnepper discharged Gross after having paid him a $3,000.00 share of gross profits under the Agreement. Since that date debtor has not received any funds from appellants.

The trustee filed an action for breach of contract in Bankruptcy Court naming Schnepper and his corporation as defendants. Defendants answered that the Agreement was not a contract and counterclaimed that they purchased a company of no value, justifiably relying, to their detriment, on debtor's misrepresentations and that debtor misappropriated or pilfered appellants' inventory.

On April 29, 1985, the Bankruptcy Court held that the Agreement constituted a valid enforceable contract. 48 B.R. 674 (E.D.Pa. 1985). The Court found that Schnepper was informed of debtor's financial difficulties since he had access to debtor's business records; that the value of debtor's company was only $4,628.04 less than that stated in the Agreement;[1] and that there

---

1. The Bankruptcy Court found that debtor's business records revealed that the value of debt-

or's inventory and accounts receivable totalled

was no credible testimony that debtor purloined the inventory. The Court entered judgment for debtor and against Howard Schnepper in the amount of $110,900.45, the total amount owed debtor less the amount that the Agreement overstates the value of the company.

Trustee thereafter filed a motion for reconsideration on whether Schnepper Pickle Corp. is jointly liable with the individual defendant. On July 31, 1985, the Bankruptcy Court amended its prior Order and entered judgment against both Howard R. Schnepper and Schnepper Pickle Corp. 51 B.R. 480 (E.D.Pa.1985).

## II.

■ In a core proceeding a bankruptcy judge is authorized to enter a final order which is subject to appellate review by a district court in the same manner as appeals in civil proceedings. 28 U.S.C. §§ 157(b)(1), 158(c). In contrast, in a non-core proceeding that is otherwise related to a case under Title 11, a bankruptcy judge may only submit proposed findings of fact and conclusions of law which are subject to de novo review by the district court. *Id.* § 157(c)(1).

The Bankruptcy Court found that this matter was a core proceeding and therefore that it had jurisdiction to enter a final order disposing of the controversy. Section 157(b)(2)(C) provides that, "[c]ore proceedings include, but are not limited to— ... (C) counterclaims by the estate against persons filing claims against the estate." The Court reasoned that since Schnepper had filed counterclaims in response to the trustee's complaint, said counterclaims constituted claims against the estate within the meaning of 28 U.S.C. § 157(b)(2)(C). 48 B.R. at 676.

The language of § 157(b)(2)(C) provides that the kind of counterclaim constituting a core proceeding is one filed by the estate against a person who has asserted a claim against the estate. *See, e.g., In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.

1986). Here, the estate initiated the action and defendant counterclaimed against the estate. Accordingly, this matter is a related matter, not a core proceeding. I will therefore treat the Bankruptcy Court's Opinions as proposed findings of fact and conclusions of law.

## III.

Appellants argue that the Bankruptcy Court did not have personal jurisdiction over the individual appellant. The Court made no specific conclusion with respect to this issue, though it clearly asserted such jurisdiction.

■ A federal court may assert personal jurisdiction over a nonresident defendant to the extent permitted under the law of the state where the court sits. Fed.R.Civ.P. 4(e). *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). A court must determine initially "whether the claim or cause of action which is being pursued arises from defendant[s'] forum related activities or from non-forum related activities" and "[i]f the claim arises from forum related activity, the court must determine whether there are enough contacts with the forum arising out of that transaction in order to justify the assertion of jurisdiction over the out-of-state defendant." *Reliance Steel Products v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982). The Pennsylvania Long Arm Statute, 42 Pa.C.S.A. § 5322(a) provides that a Commonwealth tribunal may exercise personal jurisdiction over an individual who transacts business in the Commonwealth. Examples of transacting business include:

"(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object

"(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the

$37,371.96, or $4,628.04 less than the $42,000.00 estimate.

intention of initiating a series of such acts."

*Id.* at § 5322(a)(1).

Appellants argue that the Bankruptcy Court had no personal jurisdiction over the individual appellant because Howard Schnepper is an Illinois resident with a business address in that state and because he did not sign the Agreement in his individual capacity. It is undisputed that the cause of action arises from his forum related activities: Mr. Schnepper met with debtor a number of times in Pennsylvania to review and sign the Agreement. Moreover, the Agreement provides that the new entity will engage in the sale of pickle and pickle related items in Pennsylvania. Such activities create a sufficient nexus with Pennsylvania to create personal jurisdiction. *See Koenig v. International Brotherhood of Boilermakers,* 284 Pa. Super 558, 566–74, 426 A.2d 635, 640–643 (1980).

■ Appellants' second argument is more persuasive and I find, contrary to the Bankruptcy Court, that Schnepper did not sign the Agreement in his individual capacity. When the officer of an out-of-state corporation travels to the forum state and signs an agreement in his capacity as an officer of that corporation, the forum court has personal jurisdiction over him in his capacity as an officer, but not as an individual. *Bucks County Playhouse v. Bradshaw,* 577 F.Supp. 1203, 1210 (E.D.Pa. 1983).

■ In concluding that the corporation should be held liable along with Schnepper, the Bankruptcy Court found: "When Schnepper entered into the contract with the debtor it is apparent that he did so in his individual capacity. No evidence was presented on whether his actions were even authorized by the Corporation." 51 B.R. at 481. I do not agree. First, the Agreement

identifies Schnepper as "HOWARD R. SCHNEPPER OF SCHNEPPER PICKLE CO., 501 North Desplaines Street, Chicago, Illinois." Second, Schnepper signed his name adding "Pres." on the signature line, revealing his intention that he was signing in his official capacity. Third, debtor acknowledged at the hearing before the Bankruptcy Court that he understood that Schnepper signed as President of Schnepper Pickle Co.[2]

I conclude that Howard Schnepper was not subject to the jurisdiction of the Bankruptcy Court.

## IV.

Appellants argue that the Bankruptcy Court erred with respect to the merits of the matter. In considering their contentions, I am mindful of the Bankruptcy Court's conclusion that Schnepper, the only witness testifying on behalf of appellants, "was evasive and lacked credibility." 48 B.R. at 676.

■ First, they argue that there was a failure of consideration under the Agreement: the corporation did not receive inventory and accounts receivable promised in the Agreement and debt payable was in excess of the amount specified in the Agreement. The Court concluded that because Schnepper had access to debtor's business records, appellants were on notice of any differences between debtor's estimate of inventory, accounts receivable and accounts payable and those stated in the Agreement. Consequently, according to the Court, Schnepper was not damaged by reliance on debtor's estimates. *See Love v. Metropolitan Life Insurance Co.,* 99 F.Supp. 641, 643 (E.D.Pa.1951). 48 B.R. at 677. I agree.[3]

---

**2.** Q. Was it not your understanding that Mr. Schnepper was only signing the agreement as president of the Schnepper Pickle Corporation?
A. It says on the agreement: President—Howard Schnepper, President of the pickle corporation, and that's all I knew him as.
November 21, 1984 Hearing. T. at 48.

**3.** Appellants also argue that the Bankruptcy Court erred in ruling that they were obligated to pay debtor the contractual minimum of $10,-000.00 per year because of debtor's failure of consideration. The Bankruptcy Court found to the contrary and I agree with this conclusion as well.

Second, appellants argue that the Court erred in finding that appellants were obligated on the debt owed to Central-Penn National Bank. The agreement provides that Schnepper shall make monthly payments on that debt "... so long as [debtor] remains associated with SCHNEPPER under this agreement and if [debtor] for any reason withdraws from SCHNEPPER, the obligation to pay the Central-Penn Bank shall cease." ¶ 4. Appellants assert that this clause means that if debtor is no longer associated with the operation, for any reason, appellants are not obligated to make the payments to Central-Penn. The Bankruptcy Court rejected this construction; it held that Gross was terminated without cause and that termination without cause does not excuse appellants' obligation. Appellants argue that debtor was terminated with cause and even if he had been terminated without cause the Agreement releases appellants from the obligation.

Appellants wrote the Agreement and if its meaning "is ambiguous or reasonably susceptible of two interpretations, it must be construed most strongly against the party who drew it." *Brennan v. Short Bros., Inc.*, 380 Pa. 283, 288, 110 A.2d 401, 404 (1955). This contract, however, is neither ambiguous nor reasonably susceptible of two interpretations. The plain language of the Agreement requires that paragraph 4 should be read in the conjunctive: the payments are to continue as long as (1) debtor remains associated with Schnepper under the agreement and (2) debtor has not for any reason withdrawn from the business. With respect to (1), I find that debtor remained associated with Schnepper under the Agreement. The Agreement was an employment contract for years, and under Pennsylvania law such an employee may be terminated only for cause. *Lavin v. Goldwater*, 366 Pa. 599, 79 A.2d 266 (1951). The Bankruptcy Court found that debtor was discharged without cause and therefore debtor was associated with Schnepper. I agree.

With respect to (2), appellants argue that when the Agreement refers to withdrawal of debtor, it also refers to the termination or discharge of debtor. This argument strains the meaning of withdraw. In ordinary usage, an employee's withdrawal refers to his own decision to withhold his labor or support. *Cf. Jerominski v. Fowler, Dick & Walker*, 377 Pa. 458, 461, 105 A.2d 320, 321 (1954) (using term withdraw in this manner but not interpreting term); *Ambridge Savings & Loan Assoc. v. Unemployment Compensation Board of Review*, 181 Pa.Super. 515, 521, 124 A.2d 513, 516 (1956) (same); *Commonwealth v. American Fed. of State, County and Municipal Employees, AFL–CIO Council 13*, 79 Pa.Commw. 502, 504, 469 A.2d 730, 731 (1984) (same). In contrast, the terms discharge or terminate focus on the actions of an employer taken with respect to an employee. Since it is uncontested that debtor was terminated from his employment, I agree with the Bankruptcy Court that the corporation is obligated to pay Central-Penn.

### ORDER

AND NOW, this 4th day of June, 1986, upon consideration of the parties' briefs and the testimony before and Opinions of the United States Bankruptcy Court, it is hereby ORDERED that (1) the complaint against Howard Schnepper is DISMISSED for lack of personal jurisdiction and (2) judgment is entered in favor of Gross and against Schnepper Pickle Company in the amount of $110,900.45.