In re **NATIONWIDE ROOFING & SHEET METAL, INC.,** Debtor.

**NATIONWIDE ROOFING & SHEET METAL, INC.,** Plaintiff,

v.

**CINCINNATI INSURANCE COMPANY, James A. Lent Insurance Agency, Inc., the City of Dayton Division of Fire, Vicki Carr,** Defendants.

**Bankruptcy No. 3–90–01492. Adv. No. 3–90–0256.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 13, 1991.

Thomas R. Noland, Jeffrey E. Froelich, Dayton, Ohio, Sp. Counsel, for Nationwide Roofing & Sheet Metal, Inc.

Herbert Ernst, Jr., Dayton, Ohio, trustee.

Lawrence T. Burick, and Thomas A. Knoth, Dayton, Ohio, for the Cincinnati Ins. Co.

Patrick J. Bonfield, Dayton, Ohio for City of Dayton Div. of Fire and Vicki Carr.

Thomas L. Czechowski, Dayton, Ohio, for James A. Lent Ins. Agency, Inc.

John D. Squires, Dayton, Ohio, for Orbit Movers & Erectors, Inc.

Daryl R. Douple, Dayton, Ohio, for Cent. Trust Co., N.A.·

## DECISION ON ORDER GRANTING MOTION TO ABSTAIN AND DETERMINING OTHER PENDING MOTIONS TO BE MOOT

THOMAS F. WALDRON, Bankruptcy Judge.

This adversary proceeding involves alleged causes of action for breach of an insurance contract, bad faith in failure to pay an insurance claim, and defamation. Presently before the court for determination is the Motion Of Defendant, The Cincinnati Insurance Company, To Have This Court Abstain From Exercising Jurisdiction Over This Adversary Proceeding (Doc. 12–1). The plaintiff, Nationwide Roofing & Sheet Metal, Inc., filed a response and supplemental response to this motion (Docs. 21–1, 22–1). A Reply Memorandum Of Defendant, The Cincinnati Insurance Company, In Support Of Its Motion To Have This Court Abstain From Exercising Jurisdiction Over This Adversary Proceeding (Doc. 24–1) was also filed. Although other motions are pending before this court, including Motion Of Defendant, The Cincinnati Insurance Company, For A Protective Order (Doc. 11–1), Motion Of Defendant, The Cincinnati Insurance Company, To Stay Discovery (Doc. 13–1), Motion Of Defendant, The Cincinnati Insurance Company, To Dismiss Or For Summary Judgment (Doc. 14–1, 14–2), Motion For Protective Order And Memorandum filed by the City of Dayton Division of Fire and Vicki Carr (Doc. 15–1), and Motion Of Plaintiff To Strike [material contained in reply memorandum of Cincinnati Insurance Company] Pursuant To Rule 12(f) (Doc. 27–1), as a result of this court's determination to abstain, these motions are determined to be moot.

## I. BACKGROUND

Gerald Jayne (Jayne) is the chairman of the board of directors and the sole shareholder of Nationwide Roofing and Sheet Metal, Inc. (Nationwide). Jayne owns the property (Property) which Nationwide occupies as a sole tenant. This Property was insured by Jayne through Cincinnati Insurance Company (CIC), a licensed insurance company. This insurance was obtained through James A. Lent Insurance Agency, Inc. (Lent), a licensed agent and representative of CIC. Nationwide avers that the Property was totally destroyed by fire on December 8, 1989 (Doc. 1–1).

On March 23, 1990, Jayne and Nationwide filed an action against CIC and Lent (Doc. 12–1, Ex. A) in the Common Pleas Court of Montgomery County, Ohio (Common Pleas Action). The complaint filed in the common pleas court alleges causes of action for breach of contract, bad faith for not paying an insurance claim, and def-

amation *per se* and *per quod.*[1]

On April 2, 1990, Nationwide filed for relief under chapter 11 of the Bankruptcy Code. Jayne filed for relief under chapter 7 of the Bankruptcy Code on May 9, 1990. On December 7, 1990, Nationwide initiated this adversary proceeding by filing a Complaint For Damages Jury Demand Affixed (Doc. 1). Nationwide named several defendants in this proceeding including, CIC, Lent, the City of Dayton Division of Fire (the DFD), and Vicki Carr (Carr), an employee of the DFD. Count I of Nationwide's complaint alleges that CIC and Lent breached their fiduciary duties of good faith and fair dealing by failing to pay the claim brought pursuant to the insurance contract. Count II of the complaint alleges that CIC and Lent breached the terms of the insurance contract. Under Counts III and IV, Nationwide alleges that CIC, the DFD, its employees and agents, including, but not limited to Carr, made statements which constitute defamation *per se* and *per quod.*

Under Counts I and II, Nationwide seeks to recover against CIC and Lent, jointly and severally, a judgment in the amount of one million sixty-four thousand seven hundred fifty dollars ($1,064,750.00) plus interest from the date of loss under the insurance policy, compensatory and punitive damages, interest, costs, and any other equitable relief deemed just by the court. Under Count III, Nationwide seeks to recover against CIC and Lent, jointly and severally, a judgment in an amount in excess of twenty-five thousand dollars ($25,-000) to compensate Jayne and Nationwide for damages which have and will be sustained, plus punitive damages, interest, costs, and any other equitable relief deemed just by the court. In addition, Nationwide seeks special damages in the

amount of fifty thousand dollars ($50,-000.00). Under Count IV, Nationwide seeks, in addition to general damages, special damages in the amount of fifty thousand dollars ($50,000.00). Additionally, Nationwide has made a jury demand.

Lent is the only defendant who has filed a proof of claim in this bankruptcy.

## II. DISCUSSION

 This court must determine whether it possesses jurisdiction before it determines whether it should or should not abstain from hearing this proceeding. If jurisdiction exists, the court must then determine the manner in which this jurisdiction should be exercised. *Commercial Heat Treating of Dayton, Inc. v. Atlas Indus., Inc. (Matter of Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 884 (Bankr.S.D. Ohio 1987).

### A. 28 U.S.C. § 1334—Jurisdiction

 28 U.S.C. § 1334 sets forth the provisions governing the existence of jurisdiction in bankruptcy courts providing, in pertinent part, as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Section 1334 establishes four categories of proceedings which are within the jurisdiction of the district court: (1) cases under title 11, (2) civil proceedings arising under title 11, (3) civil proceedings arising in a

---

1. The Common Pleas Action was stayed until CIC completed its investigation and made a decision whether to accept or deny the claims alleged by Nationwide and Jayne (Doc. 12–1, Ex. B). On September 17, 1990, a decision and order (Common Pleas Decision) was issued by the common pleas court dismissing the claims on the insurance contract because they were premature (Doc. 12–1, Ex. C). The defamation

claim was dismissed because it failed to state a claim (Doc. 12–1, Ex. C). The Common Pleas Decision was appealed. On April 4, 1991, oral argument on the order to dismiss was heard by the Montgomery County Court of Appeals (County Appeals Court) and a decision was rendered on May 9, 1991. The County Appeals Court reversed the common pleas court and remanded the case (Doc. 22–1, attachment).

case under title 11, and (4) civil proceedings related to a case under title 11. The first category, cases under title 11, describes the underlying bankruptcy case upon which all subsequent proceedings rest. *Michigan Employment Security Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991). With regard to the second category, civil proceedings arising under title 11, legislative history indicates that:

> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11....

*United Sec. & Communications, Inc. v. Rite Aid Corp. (In re United Sec. & Communications, Inc.)*, 93 B.R. 945, 950 (Bankr.S.D.Ohio 1988) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 445–46, *reprinted in* 1978 U.S.Code & Admin.News 5787, 6400–01). The third category of cases, proceedings arising in a case under title 11, although lacking in specificity, "seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir.1987) (footnote omitted). The final category, proceedings related to a case under title 11, has been expansively defined. As the Sixth Circuit recently stated:

> ·[T]he circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) and its substantially identical predecessor under the Bankruptcy Reform Act of· 1978, 28 U.S.C. § 1471(b). As the Third Circuit held:
>
> > The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bank-*

*ruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

[*Pacor, Inc. v. Higgins*] *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original; citations omitted). We "have accepted the *Pacor* articulation, albeit with the caveat that 'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'" *Robinson* [*v. Michigan Consol. Gas. Co.*], 918 F.2d [579] at 584 [(6th Cir. 1990)] (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986)); *accord In re Turner*, 724 F.2d 338, 341 (2d Cir.1983).

*In re Wolverine Radio Co.*, 930 F.2d at 1141–42. *See also Hughes–Bechtol, Inc. v. Ohio (In re Hughes–Bechtol, Inc.)*, 124 B.R. 1007, 1015 (Bankr.S.D.Ohio 1991). However, for purposes of determining this court's jurisdiction under 28 U.S.C. § 1334(b), it is not necessary to distinguish between these categories because "[t]hese references operate conjunctively to define the scope of jurisdiction." *In re Wolverine*, 930 F.2d at 1141.

Applying the foregoing authority, this court concludes that it possesses jurisdiction over this proceeding because the potential recovery of insurance funds and award of damages "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and may impact "upon the handling and administration of the bankrupt estate." *Wolverine*, 930 F.2d at 1142 (quoting *In re Pacor, Inc.*, 743 F.2d at 994); *see also In re Hughes–Bechtol, Inc.*, 124 B.R. at 1015–16.

The determination of the existence of jurisdiction is only the initial step in resolving the issue of abstention. As this court previously stated in *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at

884, "[a] recognition of the difference between the existence of jurisdiction and the exercise of jurisdiction is fundamental to an understanding and resolution of the issues presented...." The exercise of authority by the bankruptcy courts is governed by 28 U.S.C. § 157.

### B. 28 U.S.C. § 157—Core/Non–Core

28 U.S.C. § 157 sets forth the provisions which govern the manner in which a bankruptcy court expresses its determination of a proceeding, either by a final judgment (§ 157(b)(1)) or by proposed findings of fact and conclusions of law (§ 157(c)(1)). Pursuant to § 157(b)(1), the bankruptcy court is granted the authority "to determine all cases under title 11.[2]" Additionally, the bankruptcy court has the authority to determine all "core proceedings under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The term "core proceeding" is not defined, but § 157(b)(2) contains a non-exclusive listing of examples of core proceedings.[3] Under § 157(b)(3)[4], a judge shall determine whether a proceeding is core or whether it is otherwise related to a case under title 11. Pursuant to 28 U.S.C. § 157(c)(1),

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

▪ The category of non-core proceedings is extremely limited; thus, an examination of the characteristics existing in non-core proceedings will be of assistance. *Matter of Walton*, 104 B.R. 861, 864 (Bankr.S.D.Ohio 1988). A non-core proceeding is identified by the following characteristics- a proceeding filed in the bank-

---

**2.** § 157. Procedures.

....

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

**3.** § 157. Procedures.

....

(b)(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**4.** § 157. Procedures.

....

(b)(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

ruptcy court alleging a cause of action which:

1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),

2) existed prior to the filing of the bankruptcy case,

3) would continue to exist independent of the provisions of title 11, and

4) the parties, rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case.

*Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (Matter of Hughes–Bechtol, Inc.)*, 107 B.R. 552, 556 (Bankr.S.D.Ohio 1989); *Matter of Walton*, 104 B.R. at 864; *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 888; *see also Marshall v. Michigan Dept. of Agriculture (In re Marshall)*, 118 B.R. 954, 963 (W.D.Mich.1990); *Grabowski v. Levin (In re Second Pine, Inc.)*, 107 B.R. 48, 49 (E.D.Pa.1989).

 The proceeding presently before the court presents issues based upon state law, specifically, claims for breach of contract, bad faith in not paying an insurance claim, and defamation *per se* and *per quod*. In determining whether the proceeding is core or non-core, both the form and the substance of the proceeding must be examined. *In re Wolverine Radio, Co., Inc.*, 930 F.2d at 1144 (citing *Matter of Wood*, 825 F.2d at 97). The court notes that Nationwide has not set forth any provisions under title 11 upon which to base its claims, nor has Nationwide asserted that this adversary is a core proceeding pursuant to any specific subsection of § 157(b)(2). *See* Bankr.R. 7008. Nationwide simply argues that this court must exercise its jurisdiction because the "pending claims and the assets potentially collectable from [CIC] are the only remaining property in the estate and the only opportunity for the creditors to collect any proceeds" (Doc. 21–1 at p. 7).

 If Nationwide prevailed in this proceeding, the estate would have a greater amount of assets to distribute to its creditors. In this respect, this proceeding could be characterized as one which "affects the administration of the estate," under § 157(b)(2)(A), or one "affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship" under § 157(b)(2)(*O*); however, there are limits to the wide-sweeping language of subsections (A) and (*O*). The catch-all provisions of sections 157(b)(2)(A) and (*O*) must be construed in a manner consistent with the constitutional principles set forth in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, a plurality of the court held that the broad jurisdiction granted to bankruptcy courts was unconstitutional because it allowed bankruptcy courts to hear controversies which are required by the Constitution to be heard by Article III courts. Specifically, the Court stated:

> [T]he case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III "adjunct," plainly must be deemed at a *minimum*.

*Marathon*, 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added; footnote omitted). Thus, this court concludes that "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O)." *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir. 1986); *see also Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 (9th Cir.1990); *Marine Iron & Shipbuilding Co. v. City of Duluth (In re Marine Iron & Shipbuilding Co.)*, 104 B.R. 976, 982 (D.Minn.1989).

■ In addition, Nationwide's claims cannot be classified as a turnover proceeding under § 157(b)(2)(E). As this court previously held in *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 890, "a proceeding to collect a prepetition account receivable that is subject to a BONAFIDE dispute is a non-core proceeding." BONAFIDE disputes exist between Nationwide and CIC with regard to whether Nationwide is entitled to recover the funds claimed due under the insurance contract and with regard to whether Nationwide is entitled to recover on its claim alleging breach of fiduciary duties. Similar BONAFIDE disputes exist with regard to Nationwide's claims for defamation. It is undisputed that the resolution of these disputes is dependent solely upon state law. *See Staats v. Adolfson & Peterson, Inc. (In re Statewide Pools, Inc.)*, 126 B.R. 877, 881–82 (Bankr.S.D.Ohio 1991); *Shelly's, Inc. v. Food Concepts of Wisconsin, Inc. (In re Shelly's, Inc.)*, 97 B.R. 370, 371 (Bankr.S.D.Ohio 1989); *In re United Sec. & Communications, Inc.*, 93 B.R. at 958–59; *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429–30 (Bankr.S.D.Tex.1987); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr.E.D.N.Y.1986); *R.I. Lithograph Corp. v. Aetna Casualty and Surety Co. (In re R.I. Lithograph Corp.)*, 60 B.R. 199, 204 (Bankr.D.R.I.1986).

■ A separate analysis is required with regard to the defendant, Lent, who filed a proof of claim. This court joins those courts which have held that a counterclaim arising from the same transaction as a proof of claim filed against the estate is a core proceeding under § 157(b)(2)(C). *Jefferson Nat'l Bank v. I.A. Durbin, Inc. (In re I.A. Durbin, Inc.)*, 62 B.R. 139, 143 (S.D.Fla.1986); *Lombard–Wall Inc. v. New York City Housing Dev. Corp. (In re Lombard–Wall Inc.)*, 48 B.R. 986, 991 (S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga. 1985). *See also Bedford Computer Corp. v. Ginn Publishing, Inc.*, 63 B.R. 79, 81 (D.N.H.1986); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 400–01

(S.D.N.Y.1986); *Official Creditors' Comm. of Honeycomb, Inc. v. Fidelity Bank, N.A. (Matter of Honeycomb, Inc.)*, 72 B.R. 371, 373 (Bankr.S.D.N.Y.1987); *Brodsky v. Schnepper (In re Gross)*, 48 B.R. 674, 676 (Bankr.E.D.Pa.1985); *Marketing Resources Int'l Corp. v. PTC Corp. (In re Marketing Resources Int'l Corp.)*, 43 B.R. 71, 72 (Bankr.E.D.Pa.1984) (mere filing of proof of claim makes proceeding core under § 157(b)(2)(C)). If Lent was the only defendant in this proceeding, this proceeding would be a core proceeding; however, Lent is only one of a total of four defendants and is a defendant in only two of the four causes of action asserted by Nationwide. Upon consideration of both the form and substance of this proceeding, and in recognition of the constitutional issues implicated in the exercise of bankruptcy court jurisdiction, and because non-core aspects clearly predominate, this court finds that the core aspect involving the defendant Lent is insufficient to transform this otherwise non-core proceeding into a core proceeding. *See Sibarium v. NCNB Texas Nat'l Bank*, 107 B.R. 108, 115 (N.D.Tex. 1989); *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 111 B.R. 892, 901 (Bankr.S.D.Cal.1990). *Cf. Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 122 B.R. 747, 753 (C.D.Cal.1990).

■ Additionally, the court finds that all the remaining characteristics of a non-core proceeding are present. The causes of action asserted in this adversary existed prior to the filing of Nationwide's bankruptcy petition, the causes of action asserted by Nationwide in this proceeding would continue to exist independent of the provisions of title 11 since they are completely based upon state law, and lastly, Nationwide's bankruptcy filing has not significantly affected the parties' rights or obligations in any of their causes of action.

Based upon the foregoing, the court concludes that this is a related non-core proceeding under 28 U.S.C. § 157(b)(2).

### C. Abstention

■ Prior to the substantive determination of the abstention issue, the court

notes several significant recently enacted statutory changes which affect the procedural issues involved in abstention determinations. Section 309 of the Judicial Improvements Act of 1990 (Act) (P.L. 101–650), signed into law on December 1, 1990, amended § 1334(c)(2). Section 1334(c)(2) presently provides:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or *not to abstain* made under this subsection is not reviewable by appeal or otherwise *by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.* This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

28 U.S.C. § 1334(c)(2) (amended language emphasized). This amended statutory language authorizes bankruptcy courts to enter binding orders on motions to abstain and permits the appeal of these orders to the district court. Legislative history expounds upon this statutory language, providing:

> Section 309 would amend 11 U.S.C. 305(c) and 38 [sic] U.S.C. § 1334(c)(2) and 1452(b) to clarify that, with respect to certain determinations in bankruptcy cases, they forbid only appeals from the district courts to the courts of appeals, not from bankruptcy courts to the district courts.
>
> The statutes provide that bankruptcy judges' orders deciding certain motions (motions to abstain in favor of, or remand to, state courts) are unreviewable "by appeal or otherwise." Because bankruptcy judges may enter trial orders only if there is appellate review in an Article III court, one result of this limitation is that bankruptcy judges cannot make final judgments in such cases even when they clearly involve "core" proceedings. Section 309 would authorize bankruptcy judges to enter binding orders in connection with abstention determinations under Title 11 or Title 28 and remand determinations under Title 28, subject to review in the district court. The statutory language under each of these sections now provides that the decision of the bankruptcy court (to abstain or remand) "is not reviewable by appeal or otherwise." The proposed amendment would modify these three sections to provide that the decision of the bankruptcy court is not reviewable "by the court of appeals ... or by the Supreme Court of the United States...." Such determinations would therefore be reviewable by the district court.
>
> Speeding the disposition of these types of motions will better serve the purpose of the limitation on appeals from the district courts to the courts of appeals.

136 Cong.Rec. S17580 (October 27, 1990). *See also Goerg v. Parungao (In re Goerg),* 930 F.2d 1563, 1566 n. 5 (11th Cir.1991); *Chemical Bank v. Togut (Matter of Axona Int'l Credit & Commerce Ltd.),* 924 F.2d 31, 35 (2d Cir.1991); *McDevitt & Street Co. v. Hammons/Clark Partnership No. 1 (In re Clark),* 127 B.R. 351, 352–53 (W.D.N.C.1991); *Blackburn v. Blue Cross & Blue Shield of Northern Ohio (In re GF Corp.),* 127 B.R. 384, 385 (Bankr.N.D.Ohio 1991); *In re Statewide Pools, Inc.,* 126 B.R. at 884; *Shop & Go, Inc. v. D.K. Patterson Constr. Co., Inc. (In re Shop & Go, Inc.),* 124 B.R. 915, 919 n. 3 (Bankr. M.D.Fla.1991).

To procedurally effectuate the amended statutory change, Bankruptcy Rule (Bankr. R.) 5011(b) was amended. Bankr.R. 5011(b), which became effective on August 1, 1991, provides:

> (b) ABSTENTION FROM HEARING A PROCEEDING. ~~Unless a district~~

~~judge orders otherwise, a~~ A motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be <u>governed by Rule 9014 and shall be served on the parties to the proceeding.</u> ~~heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties to the proceeding. Within 10 days of being served with a copy of the report and recommendation a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review of the report and recommendation by the district court shall be governed by Rule 9033.~~

Bankruptcy Rule 5011(b) (new material underlined, deleted material stricken.)

Based on the foregoing, the court concludes that it is authorized to enter a final order, and not merely a report, with regard to the motion seeking abstention.

CIC has requested that this court abstain under 28 U.S.C. § 1334(c)(2) and alternatively under 28 U.S.C. § 1334(c)(1). This court has previously held:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State Court would clearly serve an important countervailing interest."

*Matter of Hughes–Bechtol, Inc.*, 107 B.R. at 559 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

CIC initially requests that this court abstain under § 1334(c)(2), the mandatory abstention provision. Every requirement set forth in § 1334(c)(2) must be met before a court may abstain from hearing a proceeding. *Id.* at 559. The requirements are as follows:

1) a timely motion to abstain must be filed by a party to the proceeding;

2) the proceeding must be based upon state law;

3) the proceeding must be "related to" a case under title 11;

4) the action could not have been commenced in a federal court absent jurisdiction under 28 § U.S.C.A. § 1334;

5) an action in state court has been commenced; and

6) the state court action can be timely adjudicated.

*Marshall v. Michigan Dept. of Agriculture (In re Marshall)*, 118 B.R. 954, 958; *Gabel v. Engra, Inc. (In re Engra, Inc.)*, 86 B.R. 890, 894 (S.D.Tex.1988). *See Lomas & Nettleton Co. v. Warren (In re Warren)*, 125 B.R. 128, 131 (E.D.Pa.1991); *Murray v. On–Line Business Systems, Inc. (In re Revco D.S., Inc.)*, 99 B.R. 768, 774–75 (N.D.Ohio 1989).

The facts presently before this court satisfy the first four requirements set forth in § 1334(c)(2). First, a timely motion for abstention was made by CIC. This adversary proceeding was commenced on December 7, 1990, and CIC, which was granted an extension of time in which to respond (Doc. 10–1), filed its motion to abstain within the extended period (Doc. 12–1). Second, this dispute involves causes of action which are based exclusively on state law claims. Third, as previously determined, this proceeding is merely "related to" a case under title 11. Fourth, absent Nationwide's filing of a chapter 11 petition, this proceeding, which does not involve a federal question or diversity of citizenship, could not have been commenced in federal court.

The fifth requirement, that an "action" in state court has been "commenced," presents a somewhat more complicated issue involving an interpretation of the phrase "an action." The filings establish that "an action" in state court was commenced on March 23, 1990 (Doc. 12–1, Ex. A); however, it named only CIC and Lent, two of the four defendants who are named in this adversary and, it set forth fewer

causes of action than set forth in this adversary.[5] Nationwide contends that the state court proceeding is different from this adversary and asserts that, "[o]ne distinction is that agents of the City of Dayton have been added as defendants for actions they took with relation to the plaintiff which are intimately intertwined with the actions and defenses of the defendant, CIC" (Doc. 21–1). Without determining whether the actions taken by the additional defendants in this proceeding are "intimately intertwined with the actions and defenses of the defendant, CIC," it is clear that, although the state court proceeding does contain some of the same parties and some of the same causes of action which are present in this adversary, the state court proceeding could not, if Nationwide prevailed, provide the relief which Nationwide could obtain in this adversary, nor would such relief be obtained against the same parties in both proceedings. As a result, the court concludes that the adversary in this court is a different "action" than the state court proceeding. Accordingly, this adversary is NOT an action which has been previously commenced. Although the court recognizes that state law may permit the amendment of pleadings to add causes of action and parties to the existing state proceeding, or permit the filing of another complaint in state court which may include additional causes of action and additional defendants, the state court "action" which is contemplated by § 1334(c)(2) has not been "commenced." Considering the facts and circumstances of this proceeding, the court determines that

CIC failed to demonstrate that the fifth requirement has been satisfied.

 Having determined that an "action" in the state court has not been commenced, the sixth requirement, likewise, has not been satisfied. Further, it is required that a party requesting abstention present evidence demonstrating that the state court action can be timely adjudicated. *See In re Warren,* 125 B.R. at 132; *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 494 (E.D.La.1990); *Fed. Nat'l Mortgage Assoc. v. Rockafellow (In re Taylor),* 115 B.R. 498, 502 (E.D.Pa.1990); *Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Corp.),* 123 B.R. 1004, 1012 (Bankr.M.D.Fla.1990), *aff'd,* 123 B.R. 1018 (M.D.Fla.1990); *Burgess v. Liberty Savings Assoc. (In re Burgess),* 51 B.R. 300, 302 (Bankr.S.D.Ohio 1985). CIC's unsubstantiated assertion that "[t]here is no dispute that the state court action can be timely adjudicated" (Doc. 12–1), in the circumstances of this proceeding, fails to meet the burden under the sixth requirement.

Accordingly, the court determines that mandatory abstention pursuant to § 1334(c)(2) is not required.

 CIC alternatively requests that this court abstain pursuant to § 1334(c)(1), permissive abstention. A non-exclusive listing of the factors which courts consider in determining whether to abstain under § 1334(c)(1) include:

---

**5.** Both the state court proceeding and this adversary contain causes of action alleging defamation; however, this adversary contains allegations of intentional conduct by Jayne. In this adversary proceeding, under Count III, Nationwide alleges that it was damaged by defamatory statements made by CIC to customers, employees, and associates of Jayne which state, suggest, and infer that Jayne "caused fire loss to the property in order to personally profit," that Jayne "committed the felony crime of arson," and that Jayne was having "severe financial difficulties." Under Count IV, Nationwide alleges that it was damaged by the DFD, its employees and agents, including, but not limited to Carr, who have made defamatory statements to customers, employees, friends, and associates of Jayne which state, suggest, and infer that Jayne "caused the fire for personal profit," that Jayne was "having an affair," that Jayne "was suicidal," that Jayne was having severe "financial difficulties," and that Jayne "committed the felony crime of arson," an intentional act. The state court complaint does not contain all of the above allegations, but merely alleges that Jayne and Nationwide were damaged by defamatory statements made by CIC to customers, employees, and associates of Nationwide, and to friends, associates, and relatives of Jayne which state, suggest, and infer that Jayne "caused the fire loss to the property" and that Nationwide was having "financial difficulties" (Doc. 12–1, Ex. A).

1) the effect or lack of effect on the efficient administration of the estate if a court abstains;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficulty or unsettled nature of the applicable state law;

4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden of this court's docket;

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial;

12) the presence in the proceeding of nondebtor parties; and,

13) any unusual or other significant factors.

See In re Statewide Pools, Inc., 126 B.R. at 883; In re Shop & Go, Inc., 124 B.R. at 920; Matter of Hughes–Bechtol, 107 B.R. at 559; In re United Sec. & Communications, Inc., 93 B.R. at 960–61; In re Shelly's, Inc., 97 B.R. at 372; In re Republic Reader's Serv., Inc., 81 B.R. at 429.

██ Several of the factors set forth under § 1334(c)(2) weigh heavily in this court's determination. This is a related non-core proceeding, the disposition of which solely involves the application of state law, and there is no jurisdictional basis other than under 28 U.S.C. § 1334. More significantly, Nationwide has not demonstrated that there are any Bankruptcy Code provisions which affect the parties' rights or obligations in any of the alleged

causes of action. Further, as a related non-core proceeding, this court will be limited to proposed findings of fact and conclusions of law, subject to objection and de novo review by the district court, all of which will delay rather than advance the ultimate resolution of the merits of all parties' positions. Additionally, abstention from this proceeding will not affect the efficient administration of the estate. Nationwide filed a petition under chapter 11, which allows a debtor an opportunity to restructure or liquidate an existing business. Although litigation and the proceeds obtained from litigation are frequently factors in the funding or distribution of a chapter 11 plan, the results of such litigation are not essential to the formulation or confirmation of a proposed plan. Thus, the efficient administration of this chapter 11 case, as opposed to the distribution of funds under the plan, will not be affected by granting the motion to abstain. A further factor weighing in favor of this court's decision to abstain is the right to a jury trial. Nationwide has made a jury demand (Doc. 1–1) and CIC has stated that it will request a jury trial (Doc. 12–1). This court, upon review of Supreme Court decisions which have analyzed the Seventh Amendment and Article III, has previously held that bankruptcy courts are currently not authorized to conduct jury trials. Matter of Hughes–Bechtol, Inc., 107 B.R. at 573. See also Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.), 911 F.2d 380, 389–92 (10th Cir.1990); In re United Missouri Bank of Kansas City, N.A., 901 F.2d 1449, 1451–57 (8th Cir.1990); but see Ben Cooper, Inc. v. Ins. Co. of State of Pennsylvania (In re Ben Cooper, Inc.), 896 F.2d 1394, 1400–04 (2d Cir.1990), vacated on other grounds, — U.S. —, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990).

Nationwide contends that this court should not abstain from hearing this proceeding and cites this court's decision in Matter of Hughes–Bechtol, Inc., 107 B.R. at 552. Hughes–Bechtol is distinguishable from the proceeding presently before this court. In Hughes–Bechtol, this court was presented with a motion for abstention and remand of an application for removal of a

state court action involving claims and counterclaims arising out of a construction contract for labor and materials. In denying the motion to abstain, the court placed great weight on the determination that the debtor's removed state court action was a core proceeding under 28 U.S.C. § 157(b)(2)(A)-matters concerning the administration of the estate, (B)-the allowance or disallowance of claims against the estate, (C)-counterclaims by the estate against persons filing claims against the estate, (K)-determinations of the validity, extent, or priority of liens, and (O)-other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 107 B.R. at 556–57. In reaching its determination, this court noted that the claims presented did not " 'resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate' rather they resembled 'creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.' " Id. at 557 (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 2798, 106 L.Ed.2d 26 (1989)). Although this court was aware of the advanced stage of the state proceedings in Hughes–Bechtol, it was noted that, "absent extraordinary circumstances, this court's duty pursuant to federal law and the specific directive contained in the Standing Order Of Reference entered in this district requires this court to determine matters properly before it, particularly core proceedings." 107 B.R. at 560. Further, this court noted that the bankruptcy court possessed greater expertise than the state court in applying various provisions of the Bankruptcy Code and that, because the whole state court proceeding was to be removed, the state court would not be burdened with a partially unresolved action on its docket and the parties would not be subjected to inconsistent results or be required to make separate or duplicative appearances. Id. at 560. Additionally, this court concluded that, because the defendant had filed a proof of claim in the bankruptcy case, an equitable proceeding was created, and thus, the defendant was not entitled to a jury. Id. at

566. See also Langenkamp v. Culp, —— U.S. ——, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990).

Although the court is mindful that abstention must be granted sparingly, after considering and weighing each of the foregoing factors, this court concludes that permissive abstention is appropriate in this proceeding.

Accordingly, the motion for abstention filed by Cincinnati Insurance Company (Doc. 12–1) is GRANTED. The other motions pending before the court, including Motion Of Defendant, The Cincinnati Insurance Company, For A Protective Order (Doc. 11–1), Motion Of Defendant, The Cincinnati Insurance Company, To Stay Discovery (Doc. 13–1), Motion Of Defendant, The Cincinnati Insurance Company, To Dismiss Or For Summary Judgment (Doc. 14–1, 14–2), Motion For Protective Order And Memorandum filed by the City of Dayton Division of Fire and Vicki Carr (Doc. 15–1), and Motion Of Plaintiff To Strike [material contained in reply memorandum of Cincinnati Insurance Company] Pursuant to Rule 12(f) (Doc. 27–1), are determined to be MOOT.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.